Russell v. Longmoor.

29    209;
39    350

JAMES D. RUSSELL ET AL. V. ELLA LONGMOOR.

[FILED MARCH 26, 1890.]

1. **Chattel Mortgage**: BILL OF SALE IN FORM: FAILURE TO RECORD: ACTUAL NOTICE. A chattel mortgage in the form of a bill of sale, with a defeasance clause, given and received *bona fide*, though unfiled, *held*, valid as against subsequent mortgagees having actual notice thereof at time of taking their respective mortgages.

2. ——: MUTILATION OF INSTRUMENT: ADMISSIBILITY IN EVIDENCE. Where the holder of a chattel mortgage such as described above, through ignorance and good faith, without intent to defraud, tore the same in two parts, thus separating the granting from the defeasance clause, and upon the trial presented the two parts as an entire instrument, *held*, that it was receivable in evidence.

3. **Instructions** given and refused, *held*, rightly given and refused.

14

ERROR to the district court for Johnson county.   Tried below before BROADY, J.

*Clarence K. Chamberlain, D. F. Osgood,* and *A. M. Appelget,* for plaintiff in error, cited: Bishop, Contracts [2d Ed.], secs. 745–7, 751–5; *Davis v. Henry,* 13 Neb., 497; *Pereau v. Frederick,* 17 Id., 117; *Schofield v. Ford,* 56 Ia., 370; *Gerrish v. Glines,* 56 N. H., 9; 1 Wait, L. & Pr., 904; Abbott, Tr. Ev., sec. 31, p. 406; *Gillespie v. Brown,* 16 Neb., 461; *Yerger v. Barz,* 56 Ia., 77; *Peters v. Ham,* 62 Id., 656; *Ward v. Watson,* 24 Neb., 592; *Falcott v. Crippen,* 18 N. W. Rep. [Mich.], 392; *Standard Paper Co. v. Freie Press Co.,* 30 Id. [Wis.], 298; *Crippen v. Fletcher,* 23 Id., 56 [56 Mich., 386]; *Chicago Lumber Co. v. Fisher,* 18 Neb., 334; *Collins v. Myers,* 16 O., 547; *Hoagland v. Van Etten,* 22 Neb., 684; *Grimes v. Cannell,* 23 Id., 191.

*S. P. Davidson,* and *S. D. Porter, contra,* cited: *Brooks v. Dutcher,* 22 Neb., 644; *Russell v. Rosenbaum,* 24 Id., 769; *Earle v. Burch,* 21 Id., 703.

COBB, CH. J.

The plaintiff below, on August 10, 1888, filed her petition and affidavit for order of replevin against James D. Russell, alleging that on August 7, 1888, she held a special interest and ownership in one general stock of groceries, consisting of canned goods, sugars, teas, coffees, crackers, and such goods as are usually kept in a general grocery stock, being that formerly kept in the store of H. E. Brown, of Elk Creek, and in his store before the last date; that she is entitled to the immediate possession of said goods, and that her special ownership is based on a bill of sale executed by said Brown June 1, 1888; that said goods are worth $1,500, and are wrongfully detained by defendant to the damage of plaintiff $1,000.   The affidavit, under

sec. 182 of the Code, for the order for delivery in replevin was made by W. H. Longmoor, as agent of the plaintiff, on August 10, 1888.   On August 12, following, the defendant Russell answered in a general denial.   On the 12th day of November, following, the several parties, A. B. Symns & Co., Noyes, Norman & Co., R. L. McDonald & Co., W. V. Morse & Co., and Hans P. Lau, appeared by attorney and represented that they each have an interest in the property described, and were made defendants with leave to answer, to all of which plaintiff excepted.   On November 13, following, the intervening defendants answered separately in general denials of the petition.

There was a trial to a jury with findings for the plaintiff, that at the commencement of this suit she was entitled to the immediate possession of the property in controversy and held a special ownership therein; that the value of her possession was $800, and the value of the property $855.54, and the amount of damages for the wrongful detention of the property by defendant $114.57, as to which sum the plaintiff entered a remittitur except as to nominal damages of one cent.

The defendant's motion for a new trial was overruled and judgment entered on the verdict that the right of possession of the property was and is in the plaintiff, and that she recover damages for the unlawful detention thereof of one cent and the costs.   To which the defendants excepted and assign fourteen grounds of error, which will be considered in the order presented in the brief of counsel.

There are two principal questions involved in this case. First, was the mortgage, or bill of sale, made by H. E. Brown to the plaintiff, made, delivered, and received in good faith, and was it known to the defendant James D. Russell when he received the chattel mortgage from said Brown, upon which he took possession of the mortgaged goods.   Upon these questions there is but little controversy.   The chattel mortgage or bill of sale was executed

and delivered on the 1st day of June, 1888 ; the consideration consisted of two promissory notes, one for $325, dated May 12, 1888, due one day after date, the other for $550, dated June 1, 1888, and due one day after date. It appears from the testimony of both H. E. Brown and W. H. Longmoor, husband of the plaintiff, that these notes are renewals of like notes executed, one to said W. H. Longmoor, and the other to the mother of plaintiff, both for borrowed money, one year previous to the respective dates, and that the present notes were given, when renewed, to the plaintiff for the convenience of the parties. No question of the real party in interest arises upon the transaction. It likewise appears that the chattel mortgage or bill of sale was executed and delivered for the purpose of securing the notes at the date which it bears, and was placed in the hands of the cashier of the bank, of which the defendant Russell was president, for safe keeping, and with the understanding between the parties that it was not to be filed for record unless it became necessary for the purpose of protection.

It very clearly appears from the testimony of J. D. Russell that he knew of the existence of this instrument before and at the time of the execution of the chattel mortgage from H. E. Brown to him, and that the occasion of his taking the last named mortgage was his hearing that the bill of sale to the plaintiff had been, or was about to be, filed for record. He then demanded a mortgage from Brown, which was given, and he then placed it in the hands of an agent to be placed on file if the bill of sale to plaintiff had been filed, otherwise to withhold it from the files.

The bill of sale to plaintiff did not embrace the entire stock of H. E. Brown, but only "one general stock of groceries, consisting of canned goods, sugars, teas, coffees, crackers, and such goods as are usually kept in general groceries stock," and valued at fifteen hundred dollars,

while Brown's stock, in store, also contained dry goods, clothing, and general merchandise and was of the value of over four thousand dollars. Russell's mortgage, afterwards given, covered Brown's entire stock and bore date the 9th day of August, 1888. On the same day Russell demanded of Brown the possession of the entire stock of goods and the store, which was surrendered to him, also one of the keys to the store. He also demanded of W. H. Longmoor the key to the store which he had, he being at the time a clerk employed by Brown in the store, which Longmoor for the purpose of protecting plaintiff's interest in the goods covered by the bill of sale, refused to give up; but it seems that the agent whom Russell placed in charge of the store succeeded in excluding Longmoor. Hence the replevin suit, which was commenced on the 10th day of August, 1888, was served, and the goods replevied the same day.

The chattel mortgages of defendants other than Russell were executed after the taking of possession of the goods by Russell and before the replevin.

There was an effort made upon the trial by the intervening defendants to show that Russell was in the possession of the replevied goods for them as well as himself at the time of the replevin, but in this I think they substantially failed. And had they succeeded, I doubt that such proof would have materially aided them. They all had knowledge, or notice, through their attorneys and agents, if not otherwise, of the bill of sale of the plaintiff at the time they received their respective liens, and in addition to this it is probable that, by the act of intervening in the suit against Russell, they burdened themselves with his knowledge of the right of the plaintiff. I come to the conclusion, therefore, that it was not necessary that the bill of sale should have been recorded, but that it was admissible in evidence as to all the defendants without recording. But counsel for the plaintiff in error urge in the brief, in

addition to the question of admissibility, that by reason of the tearing or separating into two parts by the plaintiff, or some person for her, of the bill of sale it was rendered of none effect. That this part be understood I copy the bill of sale :

" I, H. E. Brown, hereby sell and convey unto Mrs. Ella Longmoor the following described property, to-wit: One general stock of groceries, consisting of canned goods, sugars, teas, coffee, crackers, and such goods as are usually kept in general groceries stock, valued at fifteen hundred dollars, and I do hereby acknowledge the receipt of payment in full.

"Dated at Elk Creek, Neb., this 18th day of June, 1888.
" In the presence of             H. E. BROWN.
    "S. F. HOLMES."

" It is hereby agreed by and between Mrs. Ella Longmoor and H. E. Brown that the above bill of sale is only to be used in case of protection and if two certain notes are not paid. One note for $325, dated May 12, 1888, and one note for $550, dated, June 1, 1888, be paid on or before one year from this date together with interest at ten per cent from date, then this bill of sale to be null and void and to be returned to the said H. E. Brown.
                        " ELLA LONGMOOR.
                        " H. E. BROWN."

In this condition the bill of sale was placed in the hands of an officer of the bank for safe keeping, as before stated. Afterwards, on August 7, 1888, the husband of the plaintiff obtained possession of the instrument, and, at his request, the bank officer with whom it was left tore it in two parts just below the signature of H. E. Brown, first in the instrument, and leaving the lower part, or defeasance clause as it is termed by counsel, in the bank, took the upper part away. These two pieces of writing were brought together and presented as evidence of the entire instrument. Upon

presenting it to the court no concealment was made, or attempted, of the fact that it had been separated. Both Holmes, the person who separated it, and Longmoor, at whose instance it was done, were on the stand as witnesses and were cross-examined, and no evidence of fraudulent intent on the part of either of them was discovered. They evidently understood that it was, in fact, two instruments, as the signature of H. E. Brown being to both parts of it, would seem to indicate that the parties so understood the fact at the time of the execution of it.

It appears that Longmoor, desiring to place that part which he understood to be the bill of sale upon record, and not conceiving it expedient to record the part he considered the contract, caused the instrument to be divided and separated as it was. It is very clear that the recording of that part of the instrument, so recorded, was of no effect for the purpose of giving notice, but it by no means follows that the separation of the instrument had any effect upon its legality, or of the notice which any party had of its existence, as originally executed; or that it could not be restored to its original condition and introduced in evidence between the plaintiff and parties charged with such notice. Neither is there any evidence of fraudulent intent on the part of the plaintiff, or her agent, in causing such separation, especially against any party to the present action.

We are cited to various precedents of the fraudulent alteration of promissory notes, and other written instruments, but to none which treats the question involved here; nor have I been able to find a case strictly precedent. Doubtless, had not both parts of the instrument been before the court at the trial, neither part of it, separately, should have been permitted to go to the jury, but I know of no rule which would prevent the two parts restored and united, or in a condition to be so, to be allowed to go to the jury as a whole instrument.

The instructions of the court, which appear to have been given of its own motion, are full and impartial, and cover the entire case. The ninth instruction presented by the defendants, and the refusal of which by the court is complained of in the brief, is as follows:

"You are instructed that if, from the evidence, you believe that the plaintiff, Ella Longmoor, is only interested in this action to the extent of a part of the sum sued for, and that the balance thereof belongs, or did belong, to parties not in this suit, then you will find what the amount of plaintiff's interest actually is. You will deduct this from what you find the value to be of all goods which you believe the plaintiff is actually entitled to, if any, and for the value of the remainder you will find for the defendants."

There is evidence to the effect that a portion of the money expressed in the two notes from Brown to the plaintiff, for which the bill of sale was given, was, or had been, the money of the husband and of the mother of the plaintiff, but that the same was actually advanced and lent to Brown by the plaintiff, and he recognized it as her money, and executed the notes therefor, and gave the bill of sale to secure it, together with the principal part of the money, which was in fact hers. No question of the ownership of the money therefore arises in this case, or could arise as between these parties, none of the defendants being creditors of either the husband or the mother.

That part of the brief directed to the recording or want of recording of the bill of sale, or chattel mortgage, as it has been termed, will not be further considered, as the plaintiff's right to recover is beyond and independent of the recording of that instrument. There is no evidence in the case as to any understanding between the plaintiff and Brown to the effect that he should go on and dispose of the goods in the ordinary course of trade after the giving of the bill of sale. Neither are the defendants in a condition

to raise such question, even if there were evidence to sustain it, as it does not appear that any of the indebtedness arose after the date of the bill of sale.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.