FARMERS & MERCHANTS BANK OF YORK, APPELLANT,
v. HENRY F. ANTHONY ET AL., APPELLEES.

FILED FEBRUARY 8, 1894.    No. 6040.

1. **Validity of Unrecorded Chattel Mortgage**: RIGHTS OF CREDITORS. When the possession of property described in a chattel mortgage remains with the mortgagor, and the mortgage, or a copy thereof, is not filed as required by section 14, chapter 32, Compiled Statutes, 1893, the mortgage is absolutely void as to creditors of the mortgagor, no matter whether they have actual notice of the mortgage or not. *Houk v. Condon*, 40 O. St., 569, *Sayre v. Hewes*, 32 N. J. Eq., 652, and *Brothers v. Mundell*, 60 Tex., 240, followed.

2. ———: BONA FIDE PURCHASERS OF CHATTELS. It seems that

a "subsequent purchaser in good faith," within the meaning of section 14, chapter 32, Compiled Statutes, 1893, is one who acquires title to mortgaged property by contract with the mortgagor or his vendee, after the execution of the mortgage and without notice thereof; and that a purchaser of such property at execution sale, would take it discharged of the mortgage lien, irrespective of such purchaser's knowledge of the existence of such mortgage lien.

3. **Marshaling Securities:** CHATTEL MORTGAGE LIEN: LIEN OF LEVY. The rule of compelling a first resort to a particular one of two funds for a creditor's benefit, who can reach but one of them, will not be enforced, when to do so will operate to the prejudice of the party entitled to the double fund. *Sweet v. Redhead*, 76 Ill., 374, followed.

APPEAL from the district court of York county. Heard below before WHEELER, J.

The opinion contains a statement of the case.

*M. B. Reese, E. E. Brown,* and *G. W. Bemis,* for appellant:

A purchaser who has actual notice of the claim of a third party in the property purchases subject to such right, although the instrument under which the third party claims is not of record. (*Railsback v. Patton,* 34 Neb., 490; *Russell v. Longmoor,* 29 Neb., 209; *Patrick v. Paulson,* 34 Neb., 416.)

If one party has a lien on or interest in two funds for a debt, and another party has a lien on or interest in one only of the funds for another debt, the latter has a right in equity to compel the former to resort to the other fund, in the first instance, for satisfaction, if that course is necessary for the satisfaction of both claims. (Story, Eq. Juris., sec. 633; *Ingalls v. Morgan,* 10 N. Y., 178; *Kurdig v. Landis,* 135 Pa. St., 612; *Fassett v. Mulock,* 5 Col., 466.)

*Gilbert Bros.,* contra:

The clear meaning of section 1796, Cobbey's Statutes, is,

that an unrecorded mortgage is void as to creditors absolutely without qualification, and that it is void as to subsequent purchasers and mortgagees in good faith; in other words, the qualification "in good faith" applies to "subsequent purchasers and mortgagees" alone, and not to creditors. This is the construction which is placed upon identical statutes in other states. (Jones, Chattel Mortgages [3d ed.], sec. 318; *Farmers Loan & Trust Co. v. Hendrickson,* 25 Barb. [N. Y.], 484; *Tyler v. Strang,* 21 Barb. [N. Y.], 198; *Tiffany v. Warren,* 37 Barb. [N. Y.], 571; *Sayre v. Hewes,* 32 N. J. Eq., 652; *Houk v. Condon,* 40 O. St., 569; *Brothers v. Mundell,* 60 Tex., 240; *Pyle v. Warren,* 2 Neb., 241; *Ransom v. Schmela,* 13 Neb., 76; *Earle v. Burch,* 21 Neb., 702.)

If a party has two mortgages to secure a debt, both of them due, and there is any advantage which will accrue to him by foreclosing either one first, the law allows him to exercise his option as to the order of foreclosure. (*Swift v. Redhead,* 76 Ill., 374; *Cutler v. Ammon,* 21 N. W. Rep. [Ia.], 604; *Clarke v. Bancroft,* 13 Ia., 320.)

RAGAN, C.

During the summer of 1890 the York National Bank, of the city of York, in York county, Nebraska, loaned $4,000 to Henry F. Anthony with which to buy flaxseed. The money was advanced at different times in sums of $1,000, Anthony giving the bank a note for each thousand when advanced and a chattel mortgage calling for a thousand bushels of flaxseed. The flaxseed, covered by four mortgages, was commingled in one bin. Some time prior to February 11, 1892, the notes of Anthony remaining unpaid, the bank discovered that the bin contained not 4,000 bushels of flaxseed, but about 2,000 bushels, and on said date procured Anthony to confess judgment in its favor on the first one of said four notes for $1,000, caused an execution to be issued on said judgment and placed in the

hands of an officer, who levied the same upon some grain
belonging to Anthony.   This grain was at the time stored
in elevators and had been purchased by Anthony with
money borrowed of the Farmers & Merchants Bank of
said York county.   This bank, at the time of the levy on
the grain, held three chattel mortgages thereon, given to it
by Anthony as security for money so borrowed by him of
the bank.   These mortgages, nor copies thereof, at the
date of the levy of the execution on said grain, had not
been filed in the office of the county clerk of said York
county.   After the officer had seized Anthony's grain
under the execution, the Farmers & Merchants Bank filed
its mortgages and brought this suit against Anthony, Snod-
grass, the officer, and the York National Bank, to enjoin
Snodgrass from selling the grain levied upon, to have its
three mortgages declared a first lien upon the grain, and a
decree entered for its sale to pay the amount due it from
Anthony ; or, if the court should decide the York National
Bank's lien on the grain, by reason of the levy of the
execution thereon, was superior to the lien of the Farmers
& Merchants Bank by virtue of its mortgages, then to
compel the York National Bank to apply the value of the
flaxseed on hand, and on which it held mortgages, to the
payment of the note reduced to judgment, and on which
the execution levied on the grain had been issued.   The
Farmers & Merchants Bank also alleged in its petition
that the York National Bank, at the time and before its
levy of the execution on the grain, had actual knowledge
of the existence of the mortgages sought to be foreclosed,
and this allegation was not denied in the answer of the
York National Bank.   The district court found that by
the agreement with Anthony, and by virtue of the four
mortgages given by him to the York National Bank, it
had a lien on all the flaxseed in said bin securing the entire
sum of $4,000, evidenced by his four notes, and that no
part of either of said notes had been paid; that the value

of the flaxseed covered by the York National Bank's mortgages did not exceed $1,500; that the York National Bank had neither actual nor constructive notice of the existence of the mortgages held by the Farmers & Merchants Bank on Anthony's grain prior to its seizure under the execution; that the York National Bank, by virtue of the levy of the execution on the grain of Anthony, acquired a lien thereon superior to the mortgage lien of the Farmers & Merchants Bank; that the Farmers & Merchants Bank was not entitled to a decree compelling the York National Bank to apply any part of the value of the flaxseed on which it had mortgages to the satisfaction of the judgment against Anthony, and rendered a decree accordingly.   The Farmers & Merchants Bank appealed.

For the purposes of this opinion we shall disregard the finding of the district court, that the York National Bank had no actual notice of the mortgages held by the Farmers & Merchants Bank on the grain levied upon, and assume that, at and before the York National Bank caused the grain in controversy to be levied upon, that bank did have actual knowledge that Anthony had pledged it, by the mortgages in suit, to the Farmers & Merchants Bank, to secure money borrowed from it by him and used in the purchase of the grain mortgaged.   The correctness of the decree of the district court is assailed here on two grounds:

1. That although copies of appellant's mortgages had not been filed in the office of the county clerk of York county at the time of the seizure of the grain on the execution, yet the York National Bank, having actual knowledge of the existence of said mortgages, could not, and did not, by the seizure of the mortgaged grain on execution, acquire a lien thereon superior to the lien created by the mortgages.   No claim is made here that appellant was ever in possession of the grain covered by these mortgages, nor that the York National Bank was not in fact a creditor of the mortgagor, Anthony.   We have, then, the clear ques-

tion, does the fact that a creditor, knowing his debtor has mortgaged his personal property, a copy of such mortgage not being filed and the debtor remaining in possession of the property, estop such creditor from seizing the property on execution and holding it as against such mortgagee ?

Section 14, chapter 32, Compiled Statutes, 1893, provides : " Every mortgage, or conveyance intended to operate as a mortgage, of goods and chattels hereafter made, which shall not be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, or a true copy thereof, shall be filed in the office of the county clerk," etc.   By this law, then, a chattel mortgage, when the same, or a copy thereof, is not filed in the clerk's office, and no actual change of possession of the mortgaged property has occurred and continues, is absolutely void as against the creditors of the mortgagor. Whether a creditor has knowledge of such a mortgage is immaterial.   So far as he and his rights are concerned, such a mortgage does not exist.   The term " creditor " in this statute means a judgment, execution, or attachment creditor ; that is, a creditor who is using the courts of law and their processes for the collection of his debt.

Statutes in all essential respects the same as ours exist in the states of New York, New Jersey, Ohio, Michigan, and Minnesota, and have been before those courts for construction, and the writer is not aware of any decision which holds that under such a statute as this, knowledge on the part of a creditor that his debtor had executed a chattel mortgage, which mortgage, or a copy thereof, had not been filed, and under which no change of possession of the things mortgaged had occurred, precludes the creditor from seizing, on execution, the property described in the mortgage of his debtor.   Such is the doctrine in New Jersey.

In *Sayre v. Hewes*, 32 N. J. Eq., 652, it is said: "Unless a chattel mortgage is filed in the county where the mortgagor resides at the time of its execution, or the mortgagee takes immediate possession of the mortgaged chattels and continues in the actual and constant possession of them, the mortgage is absolutely void against the creditors of the mortgagor. * * * The statute concerning chattel mortgages makes an important distinction between creditors and subsequent purchasers or mortgagees. Purchasers or mortgagees, to avail themselves of a default on the part of a prior mortgagee, must take without notice of his rights, but a creditor is not affected by such notice." Such is the doctrine of the supreme court of Ohio. See *Houk v. Condon*, 40 O. St., 569, where it is said: "This case requires the determination of two questions: Did the levy of the executions create a lien on the wheat prior to the lien of the chattel mortgage of plaintiff in error? * * The wheat was levied upon on May 21st. At that time the mortgage to Houk was on file in the township in which the property was. The statute required the mortgage to be on file in the township in which the mortgagor resided. This section of the statute provides that unless the mortgage shall be filed in the township in which the mortgagor resides it shall be void as against the creditors of the mortgagor, subsequent purchasers and mortgagees in good faith. Under this provision, the mortgage not being on file with the clerk of the township where the mortgagor resided, it was void as to creditors. * * * The rule applicable to a mortgagee in good faith is not applicable to a general creditor. A mortgagee may give credits solely upon the faith of the mortgage security, which, if taken in good faith, is valid. The lien created by it arises from the acts of the parties, while the lien of a levy arises by operation of law." To the same effect see *Brothers v. Mundell*, 60 Tex., 240; Jones, Chattel Mortgages, sec. 318.

As opposed to the views expressed by the above authori-

ties, counsel for appellant call our attention to *Russell v. Longmoor*, 29 Neb., 209, and *Patrick v. Paulson*, 34 Neb., 416. Those cases, however, are not in point here. The contest in those cases was between mortgagees of the same property. We are also referred by appellant's counsel to *Railsback v. Patten*, 34 Neb., 490. In the syllabus of this case it is stated that one who purchases property with knowledge that another has an unfiled mortgage lien thereon, is not a purchaser "in good faith" as against such mortgagee. This language is not in conflict with the conclusion we have reached in the case under consideration. It seems that a "subsequent purchaser in good faith," within the meaning of section 14, quoted above, is one who acquires title to mortgaged property by contract with the mortgagor, or his vendee, after the execution of the mortgage, and without notice thereof; and that a purchaser of such property, sold under execution, would take it discharged of the mortgage lien, itself invalid, as against the lien created by seizure of the property under the execution, irrespective of such purchaser's knowledge of the existence of such mortgage lien. But that point is not necessary to a decision of the case before us, and we do not determine it.

The decree of the district court, giving the York National Bank a lien on the grain superior to the lien of the Farmers & Merchants Bank, by virtue of its unfiled mortgages, was right.

2. Counsel for appellant also contend that the decree appealed from is erroneous, in that it did not compel the York National Bank to credit its judgment with the value of the flaxseed pledged to secure the payment of the note on which the judgment was confessed. The court found, however, that the debt owing by Anthony to the York National Bank and unpaid was more than $4,000 ; that all the flaxseed covered by all the mortgages was pledged to pay this entire debt, and that the value of all the flaxseed did not exceed $1,500. This finding is supported by the evi-

dence.   To compel the York National Bank to apply the value of the flaxseed to a satisfaction of the execution levied on the grain, would leave the debt, now partly secured by the flaxseed, without adequate security; in fact, with a security largely insufficient to satisfy such debt.   True, the York National Bank has two securities, the mortgage on the flaxseed, and the levy on the grain.   It acquired these securities by a prudent compliance with the law, and if by enforcing its lien on the grain it can strengthen its other security and thus decrease its loss, I know of no rule or principle of equity that forbids it from so doing.   This rule of compelling a first resort to a particular one of two funds for a creditor's benefit, who can reach but one of the funds, will not be enforced, when to do so would operate to the prejudice of the party entitled to the double fund. (*Sweet v. Redhead*, 76 Ill., 374.)

The decree appealed from must be affirmed and it is so ordered.

AFFIRMED.

POST, J., and RYAN, C., not sitting.