## FIRST NAT. BANK OF LINCOLN, NEB., et al. v. LIVE STOCK NAT. BANK.*

Circuit Court of Appeals, Eighth Circuit.
March 5, 1929.

No. 8142.

Frank J. Reed, of Mitchell, Neb. (Frank M. Hall, Earl Cline, and Frank D. Williams, all of Lincoln, Neb., on the brief), for appellants.

*Rehearing denied May 20, 1929.

William C. Dorsey, of Omaha, Neb. (H. Malcolm Baldrige, of Omaha, Neb., on the brief), for appellee.

Before STONE and LEWIS, Circuit Judges, and MARTINEAU, District Judge.

MARTINEAU, District Judge. A. Victor Bryan, a cattle dealer living in Scotts Bluff county, Nebraska, in October, 1926, made two mortgages to secure two notes, one of $10,000 and the other of $8,000. The money was borrowed by Bryan from the Interstate Live Stock Commission Company, and in due course, before maturity, the notes were transferred to the Live Stock National Bank, of Omaha, Neb. The borrowed money was used to purchase the cattle covered by the two mortgages. By mistake the mortgages, about the time they were made, were recorded in Sioux county, Nebraska, where the cattle were located, instead of Scotts Bluff county, the home of Bryan. Bryan was also indebted to the First National Bank of Lincoln, Neb., for money which he had borrowed prior to making the notes held by the Live Stock National Bank.

February 19, 1927, the First National Bank levied an attachment upon the cattle covered by the two mortgages above mentioned, and upon other property of Bryan. February 21, 1927, the Live Stock National Bank filed its two mortgages with the clerk of Scotts Bluff county, Nebraska. February 23, 1927, Bryan filed his voluntary petition in bankruptcy, and on that day was adjudged a bankrupt. At the time of the filing of the attachment suit by the First National Bank, the sheriff took possession of the mortgaged cattle. March 15, 1927, the first meeting of creditors was held, and Thomas W. Shepard was made trustee. Prior to that time the First National Bank filed with its proof of claim a petition for the preservation of the attachment lien for the estate, for the benefit of general creditors, and disclaimed any individual preference under the attachment. The next day the referee ordered the sheriff to deliver to the trustee all the property which he took possession of under the attachment. The sheriff was not a party to the bankruptcy proceedings, but complied with the order of the referee on March 17, 1927, by delivering the cattle to the trustee. The referee, at the time he ordered the cattle turned over by the sheriff to the trustee, made no order preserving the attachment lien for the benefit of the estate, but set that question for hearing at the time of the hearing upon secured claims, and ordered that all persons interested in said estate might within that time file objections thereto, and further ordered that no rights would be lost to the trustee or to the general estate by reason of not making the order at that time. April 15, 1927, the Live Stock National Bank filed objections to the preservation of the attachment lien, and on May 4, 1927, Thomas W. Shepard, trustee in bankruptcy, filed his petition for the preservation of that lien.

By consent of the parties the mortgaged cattle were sold for $38,000, a sum much in excess of the notes secured by the mortgages. The mortgages, at the time they were made, were executed in good faith and to secure a present consideration. They were not for an antecedent debt. They in no way diminished the estate of Bryan, but were given for the purchase price of cattle which greatly enhanced the value of his estate. At the time the attachment was run, and at the time the instruments were recorded in the proper county, Bryan was admittedly insolvent.

Under this state of facts the referee held that the attachment lien of the First National Bank had been lost by the voluntary surrender by the sheriff of the attached property to the trustee, with the consent of the attaching creditor, and that the Live Stock National Bank had the first lien upon the mortgaged cattle. This order of the referee was affirmed by the District Court. This appeal is to reverse that judgment.

The facts in this case are not in dispute. The controversy arises over the application of the bankruptcy laws to them. The chattel mortgages were made for a present consideration, to secure money used in the purchase of the cattle covered by them. By mistake they were recorded in the wrong county. Bryan the bankrupt became insolvent. The First National Bank levied an attachment upon the mortgaged property. Two days later the mortgages were recorded in the proper county. Two days after this the mortgagor, Bryan, was adjudged a bankrupt. Before the appointment of a trustee, appellant, the First National Bank, filed a petition for the preservation of its attachment lien for the benefit of the estate. A trustee was elected, and upon order of the referee the sheriff, who held the attached property, but who was not a party to the bankruptcy proceedings, with the consent of the First National Bank, voluntarily surrendered the possession of the attached mortgaged property to the trustee. The referee, without then making an order for the preservation of the attachment lien for the estate, directed that objections to the preservation of this lien might be filed. The Live Stock National Bank, the appellee herein, did

file objections to its preservation, at the same time asserting its claim against the estate, which it contended was secured by chattel mortgages on the attached property, the lien of which it claimed was superior to the attachment lien.

With these facts not in dispute, the question at issue is: Who has the first claim upon the mortgaged property, the trustee, or the Live Stock National Bank, the mortgagee? Under the Nebraska law, the lien of an attaching creditor is superior to that of an unrecorded mortgage. This being true, if bankruptcy proceedings had not been instituted, and the Nebraska state court had upheld the attachment of the First National Bank, its lien would have been superior to that of the Live Stock National Bank. But, inasmuch as the attachment was levied within four months of the institution of the bankruptcy proceedings, and while the bankrupt was insolvent, the attachment was void as against the trustee in bankruptcy, and, if the claim of the Live Stock National Bank on its mortgage had not intervened, the attached property would have gone to the trustee, to be distributed to the general creditors of the bankrupt.

When, in the event the attachment lien is dissolved, the property would go to others than the trustee, under sections 67c and 67f, of the Bankruptcy Act (11 USCA § 107), the bankruptcy court is given power to preserve the lien of the attachment for the trustee for the benefit of the estate. The appellants earnestly insist that the bankruptcy court erred in not preserving the attachment lien of the First National Bank for the benefit of the estate as against the mortgagee, while the appellee insists that the voluntary surrender of the attached property by the sheriff, with the consent of the attaching creditor, before the attachment had been perfected in the state court, defeated the attachment lien entirely, and left no lien to be preserved by the bankruptcy court for the benefit of the estate. The attachment lien in the state court had not been perfected at the time the bankruptcy proceedings were instituted, and could not be perfected, except in the state court, unless the parties interested consented to the bankruptcy court taking jurisdiction.

Before the attachment lien could be preserved in this case, the bankruptcy court should have made an order that it be preserved for the benefit of creditors, and then have directed its trustee to intervene in the state court, before the surrender of the possession of the property by the sheriff, and there perfect the attachment lien. Inasmuch as the lien had not been perfected in the state

court at the time of the institution of the bankruptcy proceedings the bankruptcy court had no lien to preserve, and could not proceed further with the attachment proceedings in the way of perfecting the attachment lien, without the consent of all parties who were interested in the attached property.

This is clearly in accord with the doctrine laid down in Taubel-Scott-Kitzmiller Co. v. Fox, 264 U. S. 426, 44 S. Ct. 396, 68 L. Ed. 770: In that case the court held that the bankruptcy court did not have the power to make a summary order for the surrender of property that was in the possession of a state court, without the consent of parties. It is true that in the Taubel Case, supra, the court stated that the invalidity of the lien as against the trustee must be established either by the admission of the holder of the lien, or by an adjudication, but in that case the contest was between the trustee and the holder of the lien; no other parties were asserting an interest in the attached property. Here the mortgagee, in the event the attachment is held to be invalid, is the interested party, and should not, either in reason or in justice, be deprived of its rights by the consent of the attaching creditor and the trustee to transfer the attachment proceedings in the state court for determination in the bankruptcy court. Many reasons might have been urged by the mortgagee why the attachment should not have been upheld in the state court. It might there have defeated the attachment lien entirely, which would have made its mortgages good, unless defeated by some cause not due to the attachment lien.

We are of the opinion that the voluntary surrender of the property by the sheriff to the trustee in bankruptcy, with the consent of the attaching creditor, before the attachment lien had been perfected in the state court, dissolved the lien, and that the bankruptcy court had no lien to preserve for the benefit of the bankrupt estate at the time its order was made.

But, if it be conceded that the attachment lien was in such a shape at the time the bankruptcy proceedings were instituted as to be preserved by an order of the bankruptcy court, it does not necessarily follow that the court had under all conditions to preserve that lien for the benefit of the estate. A certain discretion was allowed it in passing upon this question. The statute says (section 67f): "Unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien shall be preserved by the trustee for the benefit of the estate." This language certainly does not mean that the

right to have a lien preserved for the benefit of the estate is absolute. It means that such an order ought to be made only when it is consistent with all the provisions of the bankruptcy law and with the principles of equity. Courts of bankruptcy are governed by equitable principles. Here the mortgages had been given for borrowed money, which was used to purchase the cattle upon which the mortgages were taken. These cattle, when sold by the trustee, by agreement, brought a sum largely in excess of the mortgaged debt. The giving of the mortgages did not in any way diminish the estate. The transaction added to the value of the estate. The transfer did not effect a preference.

█ The whole purpose of the Bankruptcy Act is to protect against preferences and frauds, and not to defraud one who, in good faith, has advanced or loaned money on security to one who was insolvent at the time of the transaction, or later became so, and went into bankruptcy. Section 60b of the Bankruptcy Act (11 USCA § 96) expresses this purpose so clearly as to leave no doubt in the mind of any one. First National Bank v. Staake, 202 U. S. 141, 26 S. Ct. 580, 50 L. Ed. 967; Rock Island Plow Co. v. Reardon, 222 U. S. 354, 32 S. Ct. 164, 56 L. Ed. 231.

The next contention of appellants is that, conceding that the attachment lien is lost and cannot be preserved, the trustee's right to the mortgaged property is superior to that of the Live Stock National Bank, because the mortgages were recorded within four months of the bankruptcy proceedings, and when the bankrupt was known to be insolvent. The mortgages were made for a present consideration, and if they had been recorded at the time they were made they would have been good.

█ The preferential character of these chattel mortgages must be determined as of the time they were given, and not as of the time they were recorded. Under the Nebraska law, unrecorded mortgages are good as against general creditors. Farmers' & Merchants' Bank v. Anthony, 39 Neb. 343, 57 N. W. 1029. Under section 60 of the Bankruptcy Act, as construed in Carey v. Donohue, 240 U. S. 430, 36 S. Ct. 386, 60 L. Ed. 726, L. R. A. 1917A, 295, and Martin v. Commercial National Bank, 245 U. S. 513, 38 S. Ct. 176, 62 L. Ed. 441, the validity of these mortgages would be determined as of the date they were made, and would be good, unless the amendment of 1926, adding to section 60a the words "or permitted," has changed the law applicable to them.

The 1926 amendment changed only section 60a and not 60b. It simply made a preference as defined in this section conform to section 3b, and did not in any way change the rule with reference to preferences that were voidable. This distinction was recognized in Carey v. Donohue, supra, when the court said: "Congress did not undertake in section 60 to hit all preferential transfers (otherwise valid) merely because they were not disclosed either by record or possession, more than four months before the bankruptcy proceeding."

As we have held that the attachment was lost by the surrender of the property, the rule in the Carey and Martin Cases is controlling here. Aside from the legal questions involved herein, the equities of the case could scarcely be stronger than they are here in favor of the appellee.

The case is affirmed.