FIRST NATIONAL BANK OF DECATUR, APPELLANT, V. JAMES J. YOUNG ET AL., APPELLEES.

FILED MARCH 28, 1933. No. 28434.

*Howell, Tunison & Joyner* and *A. P. Coleman*, for appellant.

*A. D. Raun* and *Stason & Knoepfler, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

GOSS, C. J.

The plaintiff, hereinafter called First National, on July 10, 1931, sued defendant Young to establish and foreclose an equitable lien upon his crops. The suit was upon a written agreement, made on March 26, 1931, by Young, before the crops were planted, that he would give a chattel mortgage on his 1931 crops, as soon as planted and growing, to secure his note of the same date. Young had refused a demand for the mortgage. The summons was issued the day suit was filed and Young was served the next day. The record does not show that Young

ever answered or otherwise pleaded either to the petition or to the amended petition. He took no part in the trial except as a witness.

On September 26, 1931, First National filed an amended petition, making the State Bank of Decatur, hereinafter called State Bank, an additional party to the suit, and alleging that State Bank claims an interest in the same chattels by reason of a mortgage thereon, but First National alleged priority of its equitable lien.

On October 14, 1931, State Bank answered, setting up its notes executed by Young June 23, 1931, and its chattel mortgage of the same date, covering the crops and certain machinery and live stock, and claiming a prior lien. Issues between the banks were finally joined.

Trial was to the court at the February, 1932, term. The court duly found and decreed that Young was indebted to First National on his note and gave judgment for the amount due; and that Young had agreed but failed to give First National a chattel mortgage and awarded it a mortgage lien upon the crops subject to the first mortgage lien to State Bank. The court found and decreed that the State Bank chattel mortgage, executed June 23, 1931, was filed of record July 13, 1931, and was a first lien for the amount found due. First National appealed.

The evidence on the trial developed that Young's written agreement to give First National a chattel mortgage covering the 1931 crops to be planted was in the form of a recital in his March 26, 1931, chattel mortgage in favor of plaintiff and covering other chattels. That mortgage was recorded April 1, 1931. It is not involved here except as it furnishes proof that Young agreed in that writing to give the mortgage alleged in both the petition and amended petition.

As between the parties, a definite and clearly established agreement, based upon a good consideration, to execute, after they are growing, a mortgage upon crops not yet planted, may be enforced in equity if the situa-

tion of the parties and property is such that justice and equity call for such a remedy. *Sporer v. McDermott,* 69 Neb. 533; *Ryan v. Donley,* 69 Neb. 623; *Rogers v. Trumble,* 86 Neb. 316; *Skala v. Michael,* 109 Neb. 305. "The filing of a chattel mortgage upon specifically described property will not operate as constructive notice of an agreement therein contained to give a chattel mortgage upon unplanted crops." *American State Bank v. Keller,* 112 Neb. 761. A mortgagee who has notice, either actual or constructive, of the rights of another to a prior chattel mortgage is not a mortgagee in good faith and his lien will be subordinated to the rights of that other. *Weigand v. Hyde,* 109 Neb. 678; *Kelly v. Kannarr,* 118 Neb. 472. A mortgagee in good faith is one who takes a chattel mortgage to secure a debt actually and justly owing to him without actual or constructive notice of prior equities against the mortgaged property. *State Bank of Gering v. Grover,* 110 Neb. 421; *State Bank of Lushton v. Kelley Co.,* 49 Neb. 242. Under the evidence, as the district court found it and as we find it on the trial *de novo,* the following conclusions must be drawn: (1) First National was entitled in equity to judgment against Young on his written agreement to give it a chattel mortgage; and (2) State Bank was not charged with constructive notice of that written agreement by reason of its presence in Young's recorded chattel mortgage to First National; (3) State Bank had no actual or constructive notice, prior to this suit, that First National was entitled to such chattel mortgage from Young.

The chief question of fact to be decided is whether First National then knew that Young had already given such a chattel mortgage. While the decree did not expressly find that First National knew that Young had given a chattel mortgage to State Bank before Young was served with summons in this suit, that is the effect of the decree. First National says in its brief: "Only one point can be said to be in dispute, and that is, whether Mr. Way knew of the State Bank mortgage when

this suit was commenced." D. Roy Way was president of First National and handled its transactions with Young.

Mr. Way testified that he and Mr. Larson, cashier of First National, went out to see Young the afternoon of the day before the summons was served. He was cutting grain. They asked him to give the promised chattel mortgage on the crops. Mr. Larson testified that he went out with Mr. Way the evening before the summons was served. Whether the visit was before the petition was filed or before summons was issued is not clearly shown, but it was the day before the summons was served on Young. Young said he would not give the mortgage. The foregoing was in chief. For defendant, Mr. Young testified as to this matter. He said they came on July 10. Mr. Larson remained in the car, about 40 or 50 yards from the barn. Mr. Way came to Young and asked him if he was going to give a mortgage on the crops. He answered: "Roy, I have got an advance in another place, where I can get something on the crop. I gave a mortgage to Bert Rossiter on my crops." He testified he was speaking of Emmett Rossiter, the president of the State Bank. The bill of exceptions recites there was no rebuttal evidence. In this state of the evidence on this pivotal point, the trial judge who saw and heard the witnesses accepted the testimony in behalf of State Bank. If Young told the truth, First National had actual notice of State Bank's mortgage the day before summons was served and probably before the petition was filed. First National proved it was filed at 5:45 p. m., July 10, 1931.

Appellant urged that the commencement of the action at 5:45 p. m., July 10, 1931, followed by service of summons on defendant Young the next day, constituted *lis pendens* and fixed the lien of First National on the crops as superior to State Bank lien under its mortgage of June 23, 1931, but not filed until July 13. It may be noted that the record also shows a written notice of *lis pendens* was filed in the office of county clerk July 11, 1931, at 8 a. m. Appellant also claims that the unfiled chattel

mortgage of State Bank is absolutely void under section 36-301, Comp. St. 1929, on the ground that First National was "a lien-holder creditor and a subsequent mortgagee." The language of that section does not make an unfiled chattel mortgage void as against all subsequent purchasers and mortgagees. In that respect it says, "as against subsequent purchasers and mortgagees in good faith." First National was not a "lien-holder creditor" until it impounded this property by its suit. As of the moment the suit was effective the rights of the respective parties were fixed and subject to be adjudicated. Then and to that extent First National became a lien holder, as it terms it.

Section 20-531, Comp. St. 1929, begins as follows: "When the summons has been served or publication made, the action is pending so as to charge third persons with notice of pendency, and while pending no interest can be acquired by third persons in the subject-matter thereof as against the plaintiff's title." The contest here is over priority between plaintiff bank, which was entitled (as events showed) to a chattel mortgage from defendant Young, and defendant bank, which already had one from the same defendant covering the same property. The purpose of the rule of *lis pendens* was to preserve the status of the rights over the specific property affected, to hold it within the jurisdiction of the court for the purpose of granting the relief sought, and to prevent third persons, during the pendency of the litigation, from acquiring any interest in the property which would preclude the court from granting the relief sought. *Merrill v. Wright,* 65 Neb. 794.

Such was the effect here. The pendency of the suit against Young impounded the crops until the court adjudged the rights of the parties interested. While the notice precluded others than the parties to the suit from thereafter acquiring interests in the crops *pendente lite,* it did not affect existing rights, nor prevent the court from adjudicating the rights of State Bank when it later

became a party and pleaded and proved them. The rights of State Bank were not, in the word of the statute, "acquired" while the action was pending. The rights of State Bank, under its chattel mortgage, were acquired June 23, 1931. As against Young, the mortgage was valid. As against First National, considered either as a creditor or as a mortgagee, was it valid if First National had actual notice thereof on July 10, 1931, as Young testified it had and as the district court held it had?

Section 36-301 makes an unrecorded chattel mortgage absolutely void as against "the creditor of the mortgagor, and as against subsequent purchasers and mortgagees in good faith." But that section has been interpreted in this jurisdiction, as in most others, as not rendering an unrecorded chattel mortgage invalid as against a subsequent mortgagee who takes with notice. A "subsequent purchaser in good faith" is one who acquires title from a mortgagor "after the execution of the mortgage and without notice thereof." *Farmers & Merchants Bank of York v. Anthony,* 39 Neb. 343. "A chattel mortgage is, in most jurisdictions, valid as against a subsequent purchaser with notice thereof, although it has not been filed or recorded." 11 C. J. 520, citing *Wagner v. Steffin,* 38 Neb. 392; *Railsback v. Patton,* 34 Neb. 490.

"A subsequent mortgagee is ordinarily regarded as standing on the same footing as a subsequent purchaser." 11 C. J. 520, citing *Reiss v. Argubright,* 3 Neb. (Unof.) 756. In the case cited, Pound, C., said: "An oral chattel mortgage is good as between the parties thereto and others having notice thereof; it is invalid only as to creditors and subsequent purchasers in good faith. *Conchman v. Wright,* 8 Neb. 1, 4; *Sparks v. Wilson,* 22 Neb. 112, 114. Creditor in this connection means judgment, execution or attachment creditor; a subsequent mortgagee with notice is not so regarded. *Earle v. Burch,* 21 Neb. 702; *Farmers & Merchants Bank of York v. Anthony,* 39 Neb. 343, 347."

So we are led to conclude that, if it or its officers had actual notice on July 10, 1931, of the chattel mortgage of the State Bank, First National cannot have priority. The evidence is not as satisfactory on this point of notice as we might wish. The trial judge saw and observed the witnesses. He accepted as true the unequivocal testimony of Young that he told Mr. Way, president of First National, on July 10, that he had already given the chattel mortgage to State Bank. Over against this is little but the testimony of Larson to the effect that Young had promised on two or more occasions to execute the chattel mortgage but had failed to do so, and on July 10 declined to execute that promised mortgage. In the circumstances, we find that First National had actual notice from Young, before this suit was effectually begun, that he had given the State Bank the chattel mortgage upon his crops. That being found, the priorities were rightly determined by the district court.

The judgment is

AFFIRMED.