# FIRST NATIONAL BANK OF BALTIMORE *v.* STAAKE.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.

No. 213. Argued March 15, 16, 1906.—Decided April 30, 1906.

Under § 67*f* of the bankruptcy law of 1898 attachments obtained within four months of filing the petition on property which in the absence of the attachments would pass to other persons, and to which the bankrupt has only a bare legal title, may be preserved for the general benefit of the estate, and whatever the trustee realizes thereon may be distributed among the body of the creditors. The lien is valid, but it loses its preferential character in favor of the attaching creditor by the institution of the bankruptcy proceedings.

The extent to which the bankruptcy court shall recognize the rights obtained by creditors upon property attached as property of the bankrupt, but which has been conveyed by unrecorded contract, and the extent to which liens obtained by prior judicial proceedings shall be recognized are wholly within the discretion of Congress.

This writ of certiorari was allowed to review an order of the Circuit Court of Appeals affirming a decree of the District Court in favor of Staake, as trustee in bankruptcy of the estate of Chester R. Baird, bankrupt, subrogating him to the rights of certain creditors, and authorizing him to enforce their attachment liens with like force and effect as the attaching creditors, one of which was the First National Bank of Baltimore, might have done had not the bankruptcy proceedings intervened.

The facts of the case are substantially as follows: Chester R. Baird, doing business under the name of C. R. Baird & Co., and owning certain real estate in Virginia known as the West End Furnace Company, sold the same, December 7, 1899, to the Roanoke Furnace Company, subject to certain encumbrances, executed a contract in writing, and received from the Furnace Company the entire consideration, namely, $500,000, in the capital stock of the Furnace Company. Under this contract of sale the Furnace Company took immediate possession, but no deed to the company was made until November 5, 1900, when a deed was executed and recorded.

Meantime, however, and on October 26, 1900, nine different attachments, among them one by the petitioning bank, were sued out of the Hustings Court for the city of Roanoke, amounting to over $40,000, against Baird as a non-resident, and were levied upon the furnace property. Under the provisions of the law of Virginia the attachments, having been levied before the deed of the furnace property had been executed and recorded, the attaching creditors acquired, as against Baird and the Furnace Company, a lien on the properties attached.

Within four months after the levy of the attachments, namely, December 24, 1900, Baird was adjudicated a bankrupt in the District Court for the Eastern District of Pennsylvania, and on January 2, 1901, the District Court for the Western District of Virginia assumed ancillary jurisdiction of such property as was located in Virginia. On December 29, 1900, the Roanoke Furnace Company was also adjudicated a

bankrupt. On March 26, 1901, Staake was appointed trustee of Baird's estate, and on June 29, 1901, John M. N. Shimer was appointed trustee of the Roanoke Furnace Company.

It was further agreed that the deed of November 5, 1900, from Baird to the Roanoke Furnace Company was a valid conveyance to a purchaser in good faith for a then fair consideration, and was not affected by the bankruptcy proceedings.

The proceedings in question here were instituted by a petition filed by Staake, entitled both in the cases of Chester R. Baird and the Roanoke Furnace Company, averring that under the laws of Virginia the rights of the attaching creditors were superior to those of the Furnace Company, and that as to them the property attached was the property of Baird; but that, by reason of his insolvency and of the fact that these attachments had been levied within four months preceding the filing of the petition in bankruptcy, such attachments were null and void, unless the court should order them preserved for the benefit of the estate. He therefore prayed that they be decreed null and void as regards plaintiffs, but that they be preserved for the benefit of petitioner.

The bank demurred to this petition, and also answered denying that its attachment was null and void, and also denying the right of the court to enter an order preserving the attachment for the benefit of the petitioner; and alleging that respondent is entitled to the benefit of the attachment, said property when sold by an interlocutory order having realized enough to pay said attachment, as well as all prior liens.

Shimer, trustee for the Roanoke Furnace Company, also answered, praying that, if the attachment be continued for the trustee of Baird, the petitioner should be required to abate a large claim which he filed against the estate of the Roanoke Company, by the amount of said attachments.

Upon a hearing before the District Court that court overruled the demurrer to Staake's petition, and authorized him to enforce the attachment liens for the benefit of the estate.

126 Fed. Rep. 845. The Court of Appeals affirmed this action, 133 Fed. Rep. 717, and the bank petitioned this court for a writ of certiorari, which was granted.

*Mr. S. Hamilton Graves* for petitioner in this case; *Mr. William Gordon Robertson* and *Mr. Holmes Conrad*, with whom *Mr. Edward W. Robertson* was on the brief, for petitioners in *McHarg* v. *Staake, post,* p. 150, argued simultaneously herewith.

*Mr. Albert G. Dickson, Mr. John Dickey, Jr.,* and *Mr. S. Griffin*, with whom *Mr. H. Gordon McCouch* and *Mr. Samuel W. Cooper* were on the brief, for the respondents in this case and in *McHarg* v. *Staake, post,* p. 150, argued simultaneously herewith.

MR. JUSTICE BROWN, after making the foregoing statement, delivered the opinion of the court.

At the time these attachments were levied, the title to the property in question stood in the name of Baird, and the attaching creditors by their levies secured a preferential lien upon the property, not only as against Baird, but also as against the Furnace Company, which received a deed to the property November 5, 1900, after the attachments had been levied. These attachments, however, were annulled by the filing of a petition in bankruptcy against Baird within four months after the attachments were levied, and if the case stood upon this fact alone there could be no doubt that the property would pass to the trustee of the Furnace Company, discharged of the lien of the attachments. We are not concerned here with any conflicting rights of the two trustees, Staake and Shimer, since they were both appointed receivers of the Roanoke Furnace Company, and the only claim made by Shimer now is that, if the attachments be continued, the petitioner Staake be required to abate his claim against the

estate of the Furnace Company by the amount of these attachments. It is therefore unnecessary to consider whether, if the attachments were annulled, the property would pass unencumbered to the trustee of the Furnace Company, since, as stated by the District Judge, the demurrer to the petition is intended merely to raise the question whether the trustee of Baird's estate or the attaching creditors shall have the benefit of the attachments.

This depends upon the peculiar terms of section 67 of the Bankrupt Act, which provides as follows:

"SEC. 67*f.* That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, *unless the court shall, on due notice, order that the right under such levy, judgment, attachment or other lien shall be preserved for the benefit of the estate;* and thereupon the same may pass to and shall be preserved by the trustee for the benefit of the estate as aforesaid. And the court may order such conveyance as shall be necessary to carry the purposes of this section into effect: Provided, That nothing herein contained shall have the effect to destroy or impair the title obtained by such levy, judgment, attachment, or other lien, of a *bona fide* purchaser for value who shall have acquired the same without notice or reasonable cause for inquiry."

Section 67*c*, which also treats of liens created by attachments on mesne process and provides for their dissolution, in the last clause declares that—

"* * * if the dissolution of such lien would militate against the best interests of the estate of such person, the same shall not be dissolved, but the trustee of the estate of such person, for the benefit of the estate, shall be subrogated to the rights of the

holder of such lien and empowered to perfect and enforce the same in his name as trustee with like force and effect as such holder might have done had not bankruptcy proceedings intervened."

This section (67f) makes two distinct provisions for the disposition of the property of an insolvent attached within four months prior to the filing of a petition in bankruptcy against him. First, such attachments shall be declared null and void, and the property affected shall be deemed released, and shall pass to the trustee of the estate of the bankrupt; or second, the court may order that the right acquired by the attachment shall be preserved for the benefit of the estate. In the first case the whole property passes free from the attachment. In the second, so much of the value of the property attached as is represented by the attachments passes to the trustee for the benefit of the entire body of creditors, that is, "for the benefit of the estate"—in other words, the statute recognizes the lien of the attachment, but distributes the lien among the whole body of creditors.

The first provision contemplates the attachment of property to which the bankrupt has the complete, legal and equitable title, which, as soon as the attachment is dissolved, passes at once to the bankrupt's trustee as part of his estate. The second provision evidently does not apply to this, as there is no object in preserving the lien of the attachment for the benefit of the estate, since under the first clause the entire value of the property attached passes to the trustee free from the attachment. The second clause contemplates property in which the bankrupt has an interest which has been secured to attaching creditors by the levy of the writ, but which might have passed to another person, as, for instance, a purchaser under an unrecorded deed, but for the fact that the attaching creditors had acquired a prior lien thereon. In such case the statute recognizes the validity of the lien, but preserves it for the benefit of the entire body of creditors, by reason of the fact that the attachment was dissolved as a preferential lien

in favor of the attaching creditors, by the institution of proceedings in bankruptcy.

In the present case Baird had contracted to convey the property to the Roanoke Furnace Company, possession had been taken and the consideration paid, but the deed was not actually executed and recorded until after the attachment had been levied. Hence, under the Virginia statute, the validity of which is not questioned, the lien of the attachment took precedence of the deed, and would have remained a prior lien, had it not been for the institution of the bankruptcy proceedings within four months. This dissolved the attachment, and had the case rested here the property would have apparently passed to the Furnace Company, or to its trustee in bankruptcy, Shimer; but at this point the court, under the second proviso of 67f, interposed and recognized the lien of the attachment, not, however, solely for the benefit of the attaching creditors, but for the benefit of Baird's estate. Shimer made no objection, and the court declined to express an opinion as to his rights.

This is one of the very contingencies provided for by the second clause of the section, which apparently vests in the court a certain discretion with regard to the preservation of the right acquired under the attachment or other lien. In this case the court recognized the validity of the lien, the trustee of the Furnace Company making no objection to this; but the attaching creditors insist that, as the lien was acquired for their own benefit, they should not be required to share with the general creditors of Baird's estate.

Their argument is based upon the theory that the second clause was not intended to apply to liens acquired upon the estate of third parties, but to property which would have passed to Baird's trustee had the attachment not been levied. In other words, that the bankruptcy court has nothing to do with the property, since it really did not belong to the bankrupt, and would have passed to his vendee if the attachments had not been levied upon it. Indeed the opinion especially

finds that "had valid attachments not been levied, the property would have passed to the trustee of the Roanoke Furnace Company."

To what extent liens obtained by prior judicial proceedings shall be recognized is a matter wholly within the discretion of Congress. It might have validated all such liens, even though obtained the day before proceedings were instituted. It might probably have invalidated all such liens whenever obtained. It took a middle course, and invalidated all liens obtained through legal proceedings within four months prior to the filing of the petition, but at the same time preserved to the general body of creditors, as against third parties (such as purchasers under an unrecorded deed), such liens as attaching creditors had secured upon property which would have passed to the subsequent purchaser in case the attachment had not been levied. It is true that the attaching creditors are thereby deprived of the fruits of their diligence; but the same thing would have happened had the attachment been levied upon property to which the bankrupt had the whole and undisputed title, or of which he had made a fraudulent conveyance. As remarked by the District Judge, "In cases where the bankrupt makes a valid conveyance, or where his fraudulent vendee makes a valid conveyance, the purpose of the law is worked out by preserving and enforcing the liens of the attaching creditors for the *pro rata* benefit of all the creditors."

Section 67*f* is merely carrying out the general purposes of the act, of securing to the creditors the entire property of the bankrupt, reckoning as part of such property liens obtained by attaching creditors against real estate which had been transferred to another, though no deed had been actually executed and recorded.

The argument that section 67*f* in question here refers only to liens upon property which, if such liens were annulled, would pass to the trustee of the bankrupt, we think is unsound, since that contingency is amply provided for by the prior clause of the section annulling all such liens, and providing

that property affected thereby shall pass to the trustee as a part of the estate. Under the argument of the attaching creditors in this case, the subsequent clause would be entirely unnecessary. This clause evidently contemplates that attaching creditors may acquire liens upon property which would not pass to the bankrupt, if the liens were absolutely annulled, and therefore recognizes such liens, but extends their operation to the general creditors. Had no proceedings in bankruptcy been taken doubtless this property would have been sold for the benefit of the attaching creditors.

The general rule relied upon by the bank in this case, that the words "property of the bankrupt" mean only the property to which the bankrupt is beneficially entitled, and do not include property to which he has only a bare legal title, is perhaps justified by our decision in *Hewitt* v. *Berlin Machine Works*, 194 U. S. 296. But the extent to which the bankruptcy court shall recognize the rights obtained by creditors upon property attached as the property of the bankrupt, though in fact such property had been conveyed by an unrecorded contract, is a matter solely within the discretion of Congress. The liens acquired in this case were liens upon property, which as to attaching creditors was the property of the bankrupt, and Congress may lawfully insist that it shall be reckoned as a part of his estate, and pass to the trustee. As remarked by the Court of Appeals: "The rule that the trustee takes the estate of the bankrupt in the same plight as the bankrupt held it is not applicable to liens which although valid as to the bankrupt, are invalid as to creditors."

If the interest of Baird in this property were sold solely for the benefit of the attaching creditors, it would obviously result in a preference to those creditors over the general creditors of his estate, and in fraud of the bankruptcy act, which is designed to secure equality among all creditors.

The judgment of the Court of Appeals is

*Affirmed.*