## In re KOHLER.

(Circuit Court of Appeals, Sixth Circuit. February 15, 1908.)

### No. 1,716.

BANKRUPTCY—ASSETS—PROCEEDS—FRAUDULENT CONVEYANCES—APPLICATION.

Bankrupt Act July 1, 1898, c. 541, §§ 60a, 60b, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445], contain special provisions with respect to preferred creditors and sections 67a–67e relate to preferences or liens taken within four months prior to the filing of a bankruptcy petition, in all of which cases it is declared that the property covered by the conveyance and lien shall pass to the trustee "for the benefit of the estate," and section 70 provides that the trustee shall be vested by operation of law with the bankrupt's title to all property transferred by him in fraud of his creditors. Ohio Rev. St. 1892, § 6343, declares that every sale or transfer by a debtor with intent to defraud his creditors shall be void as to creditors of the debtor at the suit of any creditor or creditors "as hereinafter provided," and shall inure to the equal benefit of such creditor or creditors in proportion to the amount of their respective demands, and section 6344 pro-

vides that any creditor as to whom any of the actions prohibited by section 6343 are void may commence an action to have the same vacated, and to administer the property for the "equal benefit of all creditors." *Held* that, where a bankrupt while insolvent transferred property to his wife without consideration, and his indebtedness continued steadily to increase until he was adjudged a bankrupt, the proceeds of a settlement of a suit brought by creditors who were such at the time the transfer was made to vacate the same were distributable, both under the bankrupt act and under the state law among all the creditors, and not only among those who were creditors at the time of such transfer.

Petition for Revision of Proceedings of the District Court of the United States for the Northern District of Ohio, in Bankruptcy.

W. A. Slabaugh, for petitioner.

T. H. Bushnell, for respondents.

Before SEVERENS and RICHARDS, Circuit Judges, and KNAPPEN, District Judge.

RICHARDS, Circuit Judge. On July 2, 1903, George W. Crouse was adjudicated a bankrupt. Prior to this time, on August 22, 1901, Crouse transferred to his wife, without consideration, shares of stock in certain corporations. At that time the then existing indebtedness of Crouse aggregated $461,108.69. Additional debts contracted after August 22, 1901, and now existing, amount to $1,300,000. After Crouse was adjudicated a bankrupt, certain creditors who existed at the time of the transfer of the stock from Crouse to his wife applied to the trustee in bankruptcy to bring suit to set aside this transfer on the ground it was fraudulent as to them, and when the trustee declined to do so they brought suit themselves. Afterwards authority was given by the court below to the trustee and the parties interested to compromise and settle this suit for the sum of $29,100. This was paid to the trustee, and the controversy now is over its distribution, whether it should be divided pro rata among all the creditors of the bankrupt, or only among those who were creditors at the time the transfer of the stock was made, on August 22, 1901. The matter was referred to a special master, who held that the distribution should be pro rata among all the creditors. Exceptions to his report were taken before the court below, who held that the distribution should be limited to those who were creditors at the time of the transfer—on the 22d of August, 1901. Thus, the question has reached us.

The argument in favor of the conclusion reached by the court below seems to be based largely upon what is claimed to be the law of Ohio in such case, while the master, in holding the distribution should be made pro rata among all the creditors, plants himself squarely upon what he contends are the policy and provisions of the present bankruptcy law. The court below pointed out that, under the finding of facts as he reads it, the transfer was only "to the detriment of his [bankrupt's] then existing creditors," which he regards as controlling. The court thinks it "not harmonious with justice that persons whose legal rights have in no wise been invaded may participate in funds arising out of a transfer, which did result in the invasion of the rights of others." And it cannot believe that the bankruptcy law, in distribu-

ting an estate, intended to give any more rights to certain creditors than they had prior to its enactment.

It is apparent from the reading of the bankrupt law that one of its chief objects was to prevent fraudulent preferences and conveyances by providing means for setting them aside and distributing the proceeds equally among all the creditors. Special provisions are made with respect to preferred creditors. Bankr. Act July 1, 1898, c. 541, §§ 60a, 60b, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]. Such provisions are also made with respect to liens. Sections 67a, 67b, 67c, 67d, and 67e. All these relate to preferences or liens taken within four months prior to the filing of the petition in bankruptcy. In all these cases it is provided that the property covered by the conveyance or lien "shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right to such levy, attachment, judgment or other lien shall be preserved for the benefit of the estate." In section 70 it is broadly provided that the trustee shall be vested, by operation of law, with the title of the bankrupt, to all "property transferred by him in fraud of his creditors." It is apparent this provision applies to all property transferred by the bankrupt at any time in fraud of his creditors.

The record does not show that the Ohio court, in which the suit was brought to have the transfer to the bankrupt's wife declared fraudulent, made any finding as to the precise nature of the transfer. In fact, there was no finding; the suit was settled by a compromise approved by the court below. It appears clearly enough, however, in the record, that at the time of the transfer Crouse was indebted $461,108.69; and in the time succeeding that, before his petition in bankruptcy was filed, his indebtedness was increased by $1,300,000. We have a right, therefore, to say that the findings of the master commissioner are not open to the construction placed upon them by the court below. The finding that the "stock was transferred without consideration and to the detriment of the then existing creditors" did not, in our opinion, amount to a finding that the transfer was to the detriment of his then existing creditors alone. If his indebtedness increased so rapidly after this transfer was made that in three years it was quadrupled, we have a right to conclude that the transfer was "to the detriment" not only of his existing, but his future, creditors, and it was fraudulent in the sense that it was made not only in view of his existing but his future creditors.

One object of the bankruptcy law is to prevent preferences and secure equality. The letter of the law, from which we have quoted, provides for an equal distribution. All the estate of a bankrupt is to go to the trustee. This includes preferences and property fraudulently conveyed. In our view, the strong objection to the construction of the lower court is that it provides a ready method of effectuating preferences. A man heavily in debt, and likely to go in deeper, in other words, insolvent, but yet in business, may convey a large part of his property to his wife. Having thus put out an anchor to windward, he has the satisfaction of knowing that, if the conveyance stands, his wife is taken care of, but, if it is set aside, the creditors existing then will be preferred over the later ones. There may be reasons why the bank-

rupt would like to prefer his earlier over his later creditors. If so, here is a method ready at hand for the purpose.

The construction of sections 67f and 67c will be found in the case of First National Bank v. Staake, 202 U. S. 141, 26 Sup. Ct. 580, 50 L. Ed. 967. Here, certain attachments had been levied within four months. The court held they could be annulled, or the lien of the attachments could be preserved under the bankruptcy act, for the benefit of the estate. There was no method suggested of passing over the property covered by these attachments to the creditors who had secured them. But they could be held by the trustee "for the benefit of the entire body of creditors; that is, 'for the benefit of the estate'— in other words, the statute recognizes the lien of the attachment, but distributes the lien among the whole body of creditors." 202 U. S. 146, 26 Sup. Ct. 580, 50 L. Ed. 967.

We have examined a number of Ohio decisions, but have not found one in which the distribution of the proceeds of property transferred in fraud of creditors, recovered by a trustee in bankruptcy, directly or through others, was limited to creditors existing at the time of the transfer. The precise question does not appear to have been raised, but the rule seems to be that the title of such recovered property would be held by the trustee for the benefit of all the creditors.

Sections 6343 and 6344 of the Revised Statutes of 1892 of Ohio regulate the recovery and distribution of property conveyed in fraud of creditors. Section 6343 provides that every sale or transfer procured by a debtor to be rendered with intent to hinder, delay, or defraud creditors shall be declared void as to creditors of such debtor at the suit of any creditor or creditors "as hereinafter provided," and shall operate as an assignment and transfer of all the property and effects of such debtor, and shall inure to the equal benefit of such creditor or creditors in proportion to the amount of their respective demands, including those which are unmatured.

Section 6344 provides that any creditor, as to whom any of the acts prohibited in section 6343 are void, "whether the claim of such creditor has matured or will thereafter mature," may commence an action to have such act declared void, and such court shall appoint a trustee, who shall proceed by due course of law to recover possession of all property so sold, etc., "and to administer the same for the equal benefit of all creditors," as in other cases of assignment to trustees for the benefit of creditors.

These sections appear to us to provide clearly that where property is conveyed in fraud of creditors, it may be recovered by a trustee "for the equal benefit of all creditors," and we understand this to mean for the equal benefit of all creditors, not part of them, not simply those existing at the time the transfer was fraudulently made.

In Bowlus v. Shanabarger, 19 Ohio Cir. Ct. R. 137, the court says that the action and relief afforded by sections 6344 and 6345 of the Revised Statutes of 1892 of Ohio "are for the benefit of all creditors," and since this is the case an appeal from such judgment may be likewise treated as one for the benefit of all the creditors.

In the Matter of Gray (Sup. Ct. N. Y.) 47 App. Div. 554, 62 N. Y. Supp. 618, it was held that the right of action to avoid alleged fraudu-

lent transfers made more than four months before the filing of the petition in bankruptcy vests in the trustee. On page 557 of 47 App. Div., 62 N. Y. Supp. 618, the court says as to fraudulent transfers made more than four months before the filing of the petition, as well as those made within four months, "in either case the avails must be distributed equally among the creditors."

The judgment of the lower court is reversed, and the case remanded, with directions to order the distribution of the money referred to among all the creditors.

NOTE.—The following is the opinion of Tayler, District Judge, in the court below:

TAYLER, District Judge. This matter is on for hearing on the exceptions to the report of the special master, to whom was referred the question as to the disposition to be made of a certain fund in the hands of the trustee in bankruptcy of George W. Crouse, arising out of the settlement of certain suits brought by some of the creditors of the bankrupt. On August 22, 1901, George W. Crouse, being largely indebted, chiefly as indorser on the paper of Aultman, Miller & Co., transferred to his wife, without consideration, 50 shares of the stock of the Goodrich Company, 39 shares of the stock of the Akron Cultivator Company, and 9,700 shares of the stock of the Cleveland Pressed Brick Company. Subsequently he incurred additional obligations to a very large amount. The indebtedness now existing, which existed at the time of the transfer of these shares of stock, aggregated $461,108.69. The debts now existing, and contracted after August 22, 1901, aggregate about $1,-300,000. In 1903 he went into bankruptcy. Some of the creditors whose obligations antedated the transfer to the bankrupt's wife applied to the trustee in bankruptcy to bring suit against the bankrupt and others to set aside the transfer of the stock, which was claimed to be fraudulent as to them; this the trustee declined to do, and these creditors, acting for themselves and others, brought such suits themselves. Thereafter, authority was given by this court to the trustee and the parties in interest to compromise and settle the suits for the sum of $29,100. This sum was paid into the hands of the trustee, and the controversy now is over the question as to whether or not this sum of money is to be divided pro rata among all of the creditors of George W. Crouse, or among those only who were creditors at the time the transfer of the stock was made.

The finding of facts of the referee is as follows: "The facts agreed upon and found are: That on the 22d day of August, 1901, the bankrupt transferred to Martha P. Crouse 50 shares of Goodrich Company stock; 39 shares of Akron Cultivator Company stock; and 9,700 shares of the capital stock of the Cleveland Pressed Brick Company, without consideration and to the detriment of his then existing creditors. These creditors consisted of certain creditors of Aultman, Miller & Co., upon whose notes to them as evidence of such indebtedness George W. Crouse was an indorser."

Claim is made by counsel for the trustee that the creditors who now claim this fund alleged in their petitions, in the suits brought by them, that the transfers were made with the intention of defrauding future, as well as existing, creditors, and that this circumstance conclusively shows the right of subsequent creditors to participate in the fund arising from the suits. Whether or not such averments of the petition, made in such a case and in such a manner, would be conclusive under the circumstances which we have before us is unimportant in view of the finding of the referee. The referee has made a specific finding of facts, and it is further shown that his finding of facts is agreed upon, so that all parties are bound by it. That finding of facts is that the transfer was "to the detriment of his then existing creditors." In a formal finding such as this, the expression of the words "then existing creditors" excludes after existing creditors. Therefore the case must be considered as one in which we are to inquire whether or not a transfer of property by a debtor in fraud of the rights of existing creditors, and which could not

be attacked except by creditors in existence at the time when the transfer was made, will, if set aside, inure to the benefit of all creditors whether antecedent or subsequent to the unlawful transfer.

It seems to me not harmonious with justice that persons whose legal rights have in no wise been invaded may participate in funds arising out of a transfer, which did result in the invasion of the rights of others. The creditors whose debts arose after the transfer were not, in law, defrauded by the transfer. They lose nothing if they get none of the proceeds of the transferred property. They are benefited by the acts of the antecedent creditors in setting aside the fraudulent transfer because the amount of the antecedent indebtedness is, by so much, reduced.

I cannot think that the bankruptcy law, as to the setting aside of transfers, intended to give any more rights to creditors than they had prior to the enactment of the law, save only those rights growing out of its immediate administration, as, for instance, the unlawfulness of any transfer of property, except for a present consideration, made within four months from the filing of the petition in bankruptcy. Otherwise the rights of all parties remain as theretofore, and only those who were prejudiced by the unlawful transfer in this case may reap any benefit to be derived from a fund which the debtor, or his transferee, is compelled to pay in consequence of the unlawful transfer. This case has been argued very fully and instructively, many authorities have been cited, and some dicta quoted, which seem to imply a contrary opinion by some judges; but I am constrained to believe that the right will be done and no injustice accrue by giving to all the creditors existing at the time of the transfer the proceeds recovered in the suits which they, and they alone, could prosecute.

The exception to the report of the special master is sustained, and the trustee will be ordered to distribute the fund among the creditors who were such on the 22d day of August, 1901.