REARDON v. ROCK ISLAND PLOW CO.

(Circuit Court of Appeals, Seventh Circuit. January 5, 1909.)

No. 1,501.

1. SALES (§ 476*)—CONTRACT—CONSTRUCTION—RETAKING OF PROPERTY.

Where a contract of sale provided that the right of possession of all goods ordered or which might be ordered and shipped to the buyer should remain in the seller to hold or retake and subject the same as security to the indebtedness contracted by the contract until full payment, without, however. releasing the purchaser from payment as stipulated in the contract, the bankruptcy of the buyer justified the seller in retaking the property as between them.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 476.*]

2. BANKRUPTCY (§ 207*)—LIENS—PRESERVATION.

Under the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 564, 565 [U. S. Comp. St. 1901, pp. 3449, 3450]) § 67 b, c, f, providing for the preservation of liens in favor of the bankrupt's estate when obtained by any creditor through legal proceedings or otherwise, which are set aside by the bankruptcy proceedings, and subrogating the trustee to the rights of the creditor for their enforcement, execution liens existing in favor of creditors at the time of the intervention of bankruptcy proceedings are thereby rendered inoperative as a preference, but are retained in favor of the trustee that the liens may be distributed among the whole body of creditors.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 207.*]

3. BANKRUPTCY (§ 196*)—LIENS—WHAT LAW GOVERNS.

Whether a lien was obtained on personal property in the hands of the bankrupt by the delivery of the executions to the sheriff before the intervention of bankruptcy proceedings, and whether such lien was applicable to property held by the bankrupt under conditional sale contracts, was governed by the law of Illinois, where the executions were issued.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 196.*]

4. EXECUTION (§ 110*)—LIEN—STATUTES—EFFECT.

Rev. St. Ill. 1874, c. 77, par. 9, declaring that no execution shall bind the goods and chattels of the person against whom it is issued until it is de-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

livered to the sheriff to be executed. is a modification of the common-law rule by which a lien was created from the issuance of the writ.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 213–215; Dec. Dig. § 110.*]

5. SALES (§ 473*)—CONDITIONAL SALES—RIGHT OF SELLER—EXECUTION CREDITORS.

Where a chattel is delivered to the buyer under a conditional sale so as to clothe him with an apparent ownership, a bona fide purchaser or execution creditor of the buyer is entitled to protection as against the claim of the seller.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1371–1390; Dec. Dig. § 473.*]

Appeal from the District Court of the United States for the Northern Division of the Southern District of Illinois, in Bankruptcy.

The appellant, as trustee of the estate of Frank Brown, a bankrupt, filed his bill in the District Court—and later an amended bill on leave of the court—against the appellee, Rock Island Plow Company, for accounting and recovery for personal property obtained by the appellee from the bankrupt, two days prior to the bankruptcy adjudication, in alleged derogation of rights thereto now vested in such trustee; and this appeal is from a decree dismissing the bill, as amended, on the hearing of a plea interposed by the appellee and sustained by the trial court, the appellant electing "to file no reply to the said plea."

The facts averred in the bill are (in substance) that on November 27, 1907, Frank Brown filed his voluntary petition in bankruptcy in the trial court, and on the same day was adjudged a bankrupt; that the complainant (appellant) was elected and is acting as trustee of the estate therein; that on November 25, 1907, the bankrupt, for a pre-existing indebtedness of $406, transferred to the Rock Island Plow Company property in payment thereof valued at $500; that the bankrupt was then insolvent, and such company then had notice and reasonable cause to believe him to be insolvent; and that such transfer was an unlawful preference of that company as a creditor over other creditors of the bankrupt of the same class. In the amended bill two executions are averred as issued and in the hands of the sheriff of Tazewell county in favor of judgment creditors of the bankrupt—one in favor of Peoria Cordage Company, for $247.15, delivered to the sheriff November 13, 1907; and the other in favor of D. M. Sechler Carriage Company, for $282.25, delivered November 24. 1907—each of which was wholly unsatisfied, and therefore alleged to constitute a lien upon all real and personal property of the bankrupt on and after delivery to the sheriff; and proceedings in bankruptcy are further averred setting aside the liens so obtained as to the execution creditors, but preserving them for the benefit of the estate in bankruptcy, with the trustee subrogated therein.

The plea of the appellee, Rock Island Plow Company, which was sustained by the trial court, avers (substantially), in justification of such taking of property from the bankrupt; that the property was obtained from the appellee and held by the bankrupt exclusively under the terms and conditions of three written contracts, signed by the bankrupt in the name of his then copartnership, dated, respectively, (1) December 15, 1905, (2, 3) March 7, 1906, whereof copies are annexed to the plea; and the following terms contained in each are set forth as the conditions relied upon, viz.:

"It is agreed that the delivery of all goods sold, and the time of payment granted to purchaser by terms of this contract, are in reliance upon the credit standing and prospects of business of purchaser as now engaged, communicated direct or through usual commercial channels, and that if the status of the purchaser be not as communicated, or if it be changed hereafter before full payment by mortgage, loss by fire, sale out of usual course of trade, dissolution, assignment, bankruptcy, attachment or the like then any and all of such indebtedness shall be at our election, without notice, immediately due, or we may treat the same. whether in notes or on account as if the original purchases had been contracted for cash on delivery.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"It is agreed that the right to the possession of all goods ordered or described generally or specifically in this contract or which may be ordered and shipped to purchaser hereafter during the life of this contract as herein provided, and the proceeds (in case of sale of same) shall remain in and inure to us, with the effect that we may hold or retake and subject same as security (in the manner described by law for the subjection of chattels and foreclosure of chattel liens of like nature) to the indebtedness hereby contracted until full payment shall have been made by purchaser to our acceptance; and to this end the moneys and notes received on such sales shall be kept separate and apart from other moneys, papers and transactions, but nothing in this shall release purchaser from making payment as stipulated in this contract."

And it is further averred: That the goods mentioned remained at all times the property of the appellee, until paid for by the bankrupt; that he had not paid the purchase price therefor on November 25, 1907; that the appellee then "lawfully retook and repossessed itself of the same"; and that it was not therein "a creditor of said bankrupt within the meaning of the" bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]). The plea also states that no levy was made by the sheriff upon any of these goods; that the alleged order of subrogation in favor of the trustee "was illegal and void," and made without notice to the appellee; that theretofore, on November 29th, one of said executions was "indorsed and returned" by the sheriff, and "filed back" in the county court December 3, 1907, and on February 21, 1908, the other of said executions was returned by the sheriff, indorsed "No property found."

Ira J. Covey, for appellant.

Walter H. Kirk and B. D. Connelly, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). The sufficiency of the bill and amended bill filed by the appellant, as trustee in bankruptcy, to charge the appellee with accountability for receiving a preference within the terms of the bankruptcy act, is unquestioned; and the only issue for review is whether the facts set up in the appellee's plea are sufficient to avoid such charge, as the trial court ruled thereupon. That the contracts and defaults averred in the plea justified the taking or retaking of the property in question, as between the appellee and the bankrupt, may not be doubted. Under the provisions of the bankruptcy act, however, the facts averred in the bill and admitted by the plea raise a different question, as to the import and force of such contracts in reference to the rights set up by the trustee; and we are impressed with no theory of the contract conditions on which the plea can be upheld.

The contentions on behalf of the appellee, in support of the plea, rest upon the premise that these contracts were conditional-sale contracts—not chattel mortgages or liens upon personal property, within the provisions of paragraph 1 of the chattel mortgage act of Illinois (2 Starr & C. Ann. St. 1896, c. 95, p. 2743)—and so recognized as valid under authorities cited. On the other hand, the twofold contentions for the appellant are: (1) That no conditional sale appears, for want of contract terms retaining title in the seller, so that the several contracts are without force as liens under the Illinois act above mentioned; and (2) that, treated as conditional sale contracts, they furnish no defense against the right of action vested in this trustee, through the paramount liens of execution creditors, under the established rule in Illinois in reference to such contracts. So, it is not claimed

on the part of the appellee that its taking of the property in controver-sy can be upheld by way of the enforcement of a lien thereon in any form; and it clearly appears from the above-cited statutory provision in Illinois and the decisions thereunder that the contracts furnish no support for a lien to bar recovery under the bill.

The contract terms or conditions set out in the plea and relied upon in the argument for the interpretation sought as a conditional sale make no express provision in reference to the title—neither for retaining it in the seller, nor for its transfer to the purchaser on delivery, although the parties are so named therein—and no direct provision for title to the property delivered to the purchaser appears elsewhere in the con-tracts exhibited with the plea. Each contract is in the twofold form of an order (by the purchaser) for the goods specified, and an invoice (by the seller) stating prices and terms of payment, which plainly in-tends delivery to the purchaser for unrestricted sale, on his own ac-count, in the usual course of business, subject only to the express terms referred to. While those terms distinctly provide, not only that deliv-ery is made "in reliance upon the credit standing and business pros-pects of the purchaser," with "indebtedness" for purchase money im-mediately due, at the seller's election, for causes stated, but that "right to the possession of all goods" and proceeds of sale "shall remain in and inure to" the seller, "with the effect" that the seller "may hold or retake and subject same as security in the manner described by law" for "the indebtedness hereby contracted," we are not satisfied that terms appear under which the contract can rightly be interpreted as one of conditional sale, within the authorities, and thus distinguish-ed from a contract of sale with apt terms reserving a purchase-mon-ey lien. In view, however, of the conceded averments of fact in reference to liens preserved in favor of the estate under prior execu-tions, we are of opinion that the contracts and possession taken there-under are equally without force to defeat recovery under the bill, whether the sale be interpreted as conditional or otherwise; and so proceed to considerations of such facts, on the assumption that condi-tional-sale contracts appear, without determining the actual character of the contracts.

The bankruptcy act provides (section 67 b, c, f) for the preservation of liens in favor of the estate, when obtained by any creditor of the bankrupt, through legal proceedings or otherwise, and set aside in bankruptcy, with the trustee subrogated therein for their enforcement; and the effect of this provision, in reference to an order in bankruptcy so preserving a lien obtained in legal proceedings, is not open to ques-tion (First National Bank v. Staake, 202 U. S. 141, 146, 148, 26 Sup. Ct. 580, 50 L. Ed. 967) as rendering it inoperative as a preference, while the statute recognizes its force otherwise, but "distributes the lien among the whole body of the creditors," in conformity with the policy of the act. The executions described in the bill were issued in favor of judg-ment creditors of the bankrupt and in the hands of the sheriff for levy; and when bankruptcy intervened, liens being claimed, the court made this statutory order, on notice to the claimants—the only notice, as we believe, intended by the provision—so that the trustee became subrogat-

ed to any lien obtained by such creditors, as of the date of the adjudication of bankruptcy.

With the trustee thus entitled to the benefits of the executions, the remaining inquiries are: (1) Whether a lien was obtained upon personal property in the hands of the bankrupt upon delivery of the executions to the sheriff; and, (2) if so, whether such lien is applicable to property held by him under a contract of conditional sale. As the law of Illinois must govern the answer to both questions, and the rule there is well settled, as we believe, for an affirmative answer to each, no difficulty appears in the solution. Paragraph 9 of chapter 77, Rev. St. Ill. 1874 (2 Starr & C. Ann. St. 1896, p. 2336), provides:

"No execution shall bind the goods and chattels of the person against whom it is issued, until it is delivered to the sheriff or other proper officer to be executed."

This is a modification of the rule at common law which created a lien from the issuance of the writ, and its effect to create a lien in favor of the execution creditor is recognized in numerous decisions noted in Starr & C. Ann. St., supra. See Frink v. Pratt & Co., 130 Ill. 327, 331, 22 N. E. 819, one of the citations in appellee's brief. The cases cited contra, declaratory of the rule that an officer receiving the execution has "no interest in the property itself" to maintain an action therefor "until after a levy," do not touch the present inquiry of lien in favor of the execution creditor, and are plainly inapplicable. Upon the second question, it is stated in Gilbert v. Nat. Cash Register Co., 176 Ill. 288, 296, 52 N. E. 22, that "whatever may be the rule in other jurisdictions," this rule is established in Illinois:

"If a person agrees to sell to another a chattel on condition that the price shall be paid within a certain time, retaining the title in himself in the meantime, and delivers the chattel to the vendee so as to clothe him with an apparent ownership, a bona fide purchaser or execution creditor of the latter is entitled to protection as against the claim of the original vendor."

The authorities there cited for such rule are deemed sufficient reference; and we remark that no departure appears from the doctrine thus stated in any of the Illinois cases called to our attention.

The decree of the District Court is reversed, therefore, with direction to overrule the plea and proceed further in accord with this opinion.