**In re Alden B. WARD and Judy K. Ward, Debtors.**

**Robert H. WALDSCHMIDT, Trustee, Plaintiff,**

**v.**

**Edgcomb METALS, Alden B. Ward, Judy K. Ward, Cheryl Connell and Southeast Title Company, Defendants.**

**Bankruptcy No. 383–01973.**
**Adv. No. 383–0559.**

United States Bankruptcy Court,
M.D. Tennessee.

Oct. 3, 1984.

Robert H. Waldschmidt, Cosner & Waldschmidt, Nashville, Tenn., trustee.

William Bracken Ingram, Nashville, Tenn., for Southeast Title Co.

James A. Davis, Jr., Dearborn & Ewing, Nashville, Tenn., for Cheryl Connell.

Monte D. Curry, Nashville, Tenn., for debtors.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

The trustee seeks to enforce a judgment lien he has acquired by assignment against property purchased from the debtor before bankruptcy. Because the limitation period under Tennessee law for enforcement of this lien has expired and because no provision of the Bankruptcy Code stays or extends the state time requirements, the trustee is barred from enforcing this lien.

The following constitute findings of fact and conclusions of law as required by Bankruptcy Rule 7052.

## I. FACTS

The unlikely facts of this case are undisputed and both sides have moved for summary judgment. The following is a chronology of events:

August 29, 1979—Alden and Judy Ward ("debtors") acquire real property located in Sumner County, Tennessee.

April 4, 1983—Judgment rendered against debtors in favor of Edgcomb Metals ("Edgcomb") in Chancery Court for Davidson County, Tennessee.

April 30, 1983—Debtors execute deed transferring property to defendant, Cheryl Connell. Deed is delivered but not recorded. It is not disputed that this sale was at arms length and for fair consideration. At the time of this conveyance, three liens existed on the property. These three liens were paid in full at the time of closing.

May 6, 1983—Copy of judgment of Edgcomb recorded in Sumner County creating a (fourth) lien on the property still showing of record in the debtor's name.

May 17, 1983—Deed transferring property to Cheryl Connell recorded in Sumner County.

July 29, 1983—Debtors file voluntary Chapter 7 petition.

October 6, 1983—Trustee in bankruptcy files complaint against Edgcomb, debtors, and Connell to "avoid preferential transfer, preserve transfer and to enforce judgment lien against real property." Southeast Title Company, insurors of the sale to defendant Connell, intervened as defendants.

October 18, 1983—Debtors discharged in bankruptcy.

December 21, 1983—By agreed order of bankruptcy court, Edgcomb assigns to the trustee all its rights in the judgment lien.

The trustee now seeks to enforce the lien he acquired by assignment from Edgcomb against the real property titled in defendant Connell. He claims that he acquired a valid (now first) lien under Tennessee law, that the Bankruptcy Code frees this lien of the state limitations statutes and that the lien is preserved for the benefit of the

estate under 11 U.S.C.A. § 551 (West 1979). The owner of the property, Ms. Connell, and Southeast Title Company argue that the lien is not preserved for the benefit of the estate by § 551 and that the Tennessee statute of limitations expired precluding enforcement of the lien. The parties agree that this court must first look to state law to determine what the trustee got by way of the assignment of lien from Edgcomb. The parties disagree about how the Bankruptcy Code affects the rights so acquired.

## II. THE LIEN WAS VALID WHEN RECORDED UNDER STATE LAW

■ Under Tennessee law, Edgcomb's lien rights against the property were timely and properly established on May 6, 1983 when the judgment was recorded in the county where the property is located before the deed transferring the property to Connell was recorded. On similar facts in *Hames v. Archer Paper Co.*, 319 S.W.2d 252, 45 Tenn.App. 1, *cert. denied*, (1958) Judge Bejach of the Tennessee Court of Appeals held that a judgment lien is superior to a purchaser's title where the lien is recorded during the interval between sale of the property by the judgment debtor and the recording of the deed. The court noted that under Tennessee recording statutes actual registration of the deed must take place to be effective against creditors of the seller. *McCoy v. Hight*, 162 Tenn. 507, 39 S.W.2d 271 (1931). *See also McAllester v. Aldridge (In re Anderson)*, 30 B.R. 995 (M.D.Tenn.1983) (the hypothetical lien creditor status of a trustee under § 544(a) is superior to the rights of purchasers of property from the debtor holding under a defective deed). Therefore, when the trustee received the lien rights by assignment from Edgcomb, he acquired a valid lien under state law.

## III. STATE LIMITATIONS STATUTES

Southeast Title Company ("intervenor") as insurer under Connell's title policy, asserts that this judgment lien expired when the trustee failed to take appropriate action to enforce the lien within the time periods fixed by state law.

■ The first argument of the title company is based on TENN.CODE ANN. § 25–5–104.[1] The claim is that Edgcomb and thus the trustee lost its rights under the lien by failing to file a "bill to subject interest" within 30 days of the return of the execution unsatisfied as required by the statute. However, nowhere in the record is it shown that there was an attempt to execute on this judgment or that there was a "return of execution unsatisfied" to invoke the statute. In *Kelley v. McLemore*, 560 S.W.2d 74 (Tenn.App.) cert. denied, 560 S.W.2d 74 (1977), the court makes it clear that this statute applies only when an actual execution has been returned by the sheriff or other officer marked "unsatisfied."

A more difficult question is whether the trustee is barred from enforcing his lien rights because the property was not sold within 12 months of the judgment as provided in TENN.CODE ANN. 25–5–105.[2] The title company argues that since judgment for Edgcomb was entered on April 4, 1983, the lien was lost when the property was not sold before April 5, 1984. It reasons that had Edgcomb sat on its lien for 12 months without execution and sale it would have lost its lien and the trustee can claim no greater right to enforce the lien than Edgcomb would have had.[3]

■ The 12-month statute set out in the margin is strictly enforced by the Tennessee courts. Both execution *and* sale are required. The levy of an execution, delay of sale by agreement, or even the filing of

---

**1.** TENN.CODE ANN. § 25–5–104 provides:

In both cases of realty and personalty the lien shall cease, unless a bill in equity, to subject such interest is filed within thirty (30) days from the return of the execution unsatisfied.

**2.** TENN.CODE ANN. § 25–5–105 provides:

The lien given by this chapter will be lost, unless an execution is taken out and the land sold within twelve (12) months after the rendition of the judgment or decree.

**3.** The trustee acquired the lien pursuant to the agreed order of December 21, 1983. The 12-month period expired on April 5, 1984.

equitable suits to enforce the lien against other claimants will not extend the period. At least as early as *Gardenhire v. King*, 97 Tenn. 585, 37 S.W. 548, 549 (1896), it has been the law in Tennessee that "failure to sell within that time is as fatal to this lien as if he had neglected altogether to take out his execution."

The Tennessee cases do not readily allow exceptions to the statutory limitation on lien execution. For example, in *Fidelity & Deposit Co. v. Fulcher Brick Co.*, 30 S.W.2d 253 (Tenn.1930) the judgment creditor filed suit claiming that subsequent conveyances and other claims against the property had so clouded its lien rights that a decree was necessary to establish its superior rights. The court held that such confusion did not excuse the judgment creditor's failure to levy and sell the property noting that "unfounded doubts as to the existence of rights" will not override the express limitation of the statute.

The trustee argues that even under state law the 12-month limitation period for lien enforcement was tolled when the bankruptcy petition was filed. He relies on *Harbin v. Brooks*, 25 B.R. 703 (Bankr.W.D.Tenn. 1982) where the bankruptcy court determined that the one-year period was tolled when a Chapter 7 petition was filed because the automatic stay prevented enforcement of a judgment lien against the debtor's property. The court in *Harbin* notes TENN.CODE ANN. § 25–5–106 which extends the 12-month period in certain instances. At the time of that case, § 25–5–106 read as follows:

. If the sale within the twelve (12) months is *prevented* by injunction, writ of error, appeal in the nature of a writ of error, *or other adverse proceeding in court*, or by appeal from judgments and decrees of courts of equity in this state to the Supreme Court, or Court of Appeals, the

lien shall be continued, provided the creditor shall issue execution and sell the land within one year after the injunction is dissolved, the judgment or decree affirmed, or adverse legal proceeding dismissed. (emphasis added).

The Court reasoned that since enforcement of the lien was precluded by the bankruptcy stay, this statute allowed extension of the time limitation.

█ The *Harbin* case is, however, distinguishable for two reasons. First, *Harbin* involved a stay precluding a creditor from enforcing a judgment lien *against* the debtor's property. In this case the trustee is attempting to enforce a lien against land owned by a third party. Section 362 does not affect the trustee's lien enforcement rights against property held by a third party.[4] Furthermore, the language of TENN.CODE ANN. § 25–5–106 relied on in the *Harbin* case has since been amended to now read as follows:

If the sale within twelve (12) months is prevented by injunction or by appeal to the Supreme Court, or Court of Appeals, the lien shall be continued . . . .

By eliminating extension for "other adverse proceeding in court," it is arguable that the Tennessee legislature has narrowed the situations in which the life of the lien may be extended. The conditions for suspension of the 12-month period contained in § 25–5–106 are not present.

█ Although Edgcomb may have been confused or unaware of its rights to enforce the lien, under the strict application of Tennessee law this did not excuse its duty to execute upon the lien and sell the land within the 12-month period. If only Tennessee law applies, when the trustee received Edgcomb's rights he had the same duty to execute upon the land within the proper period. Applying state law principles, the action brought by the trustee in

---

**4.** The trustee argues that the lien is "property of the estate" under § 551 because it was acquired in settlement of a § 547 preference claim against Edgcomb and thus, enforcement of the lien is affected in some way by § 362. *See In re Appalachian Energy Industries, Inc.*, 25 B.R. 515, 9 BANKR.CT.DEC. (CRR) 1162 (M.D.Tenn.1982) and *Erickson v. Grubb & Ellis Commercial Bro-*

*kerage Co. (In re Previs)*, 31 B.R. 208 (Bankr.W. D.Wash.1983). Assuming this to be true (*see* discussion of § 551 *supra*,) it still does not bring § 362 into play since it is the lien itself which would be "property of the estate" and not Connell's real property. There is no action *against* property of the estate which is stayed.

this court to enforce the lien would not alone be effective to prolong the limitation period. It thus appears that unless some provision of the Bankruptcy Code changes the outcome required by state law, the lien acquired by the trustee ceased to be enforceable when the 12-month limitation expired. The trustee contends that 11 U.S.C.A. §§ 108(a), 551 and 546(b) (West 1979) overcome the state law limitation period.

## IV. BANKRUPTCY STATUTES

### A. SECTION 108

■ The extension of time to take certain actions created by 11 U.S.C. § 108(a) (West 1979)[5] does not apply here. By its terms § 108(a) only applies to extend time for actions which the debtor had on the date of filing the bankruptcy petition. Causes of action unrelated to debtor claims acquired by the trustee postpetition are not protected by § 108. In *McCoy v. Grinnell (In re Radcliffe's Warehouse Sales, Inc.),* 31 B.R. 827 (Bankr.W.D.Wash.1983) the trustee attempted to use his powers under 11 U.S.C.A. § 544(b) (West 1979)[6] to avoid a bulk transfer where proper notice had not been given to creditors in compliance with Article 6 of the Uniform Commercial Code. The court held that § 108(a) did not operate to extend for the trustee the

5. 11 U.S.C.A. § 108 (West 1979) provides in pertinent part as follows:
   (a) If applicable law, an order entered in a proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—
   (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; and
   (2) two years after the order of relief.

6. 11 U.S.C.A. § 544(b) (West 1979) provides that:
   (b) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

7. Although there was never a judicial determination that a § 547 preference in fact occurred,

state's six-month statute of limitations for actions by creditors affected by the faulty transfer. Judge Skidmore noted:

> 11 U.S.C. § 108(a) can only be utilized by the trustee to extend a statute of limitations which applies to the debtor's cause of action. The trustee's ability to raise noncompliance with [the provisions of bulk transfer law] does not originate from a cause of action of the debtor but from rights derived from individual aggrieved creditors pursuant to 11 U.S.C. § 544(b).... The trustee has no greater rights than those of the creditors aggrieved ...

*Id.* at 832. In the present case, the trustee has acquired the lien by assignment from Edgcomb, a judgment creditor of the debtor. Since the debtor never had any cause of action with respect to the lien, the trustee can not employ § 108(a) to extend the state limitation on enforcement.

### B. SECTION 551

■ The trustee next claims that the lien is free of the 12-month limitation on enforcement because he "preserved" the lien for the estate under 11 U.S.C.A. § 551 (West 1979) when he acquired the lien in settlement of the § 547 preference action.[7] Section 551 provides:

Edgcomb chose to concede that its judgment lien was avoidable and conveyed its interest in the judgment lien to the trustee. This court need not address the question whether Edgcomb had a good defense against the trustee's avoidance action, for example, on the ground that the debtor had sold the property for fair consideration *before* the lien attached. *Compare, Fischer v. Pauline Oil & Gas Co.,* 309 U.S. 294, 302, 60 S.Ct. 535, 539, 84 L.Ed. 764, 769 (1939) (under then existing statutes a lien was voidable when "at the date of creation of the lien the bankrupt must have been insolvent; the lien must have been acquired within four months of the filing of the petition in bankruptcy and *the property must not have been sold to bona fide purchaser.*" (emphasis added).
   We also do not reach the issue discussed by the court in *Truman v. United States (In re Tri-Sonic, Inc.),* 22 COLLIER BANKR.CAS. 528 (Bankr.N.D.Tex.1980) of whether lien rights acquired by the trustee through an assignment can be preserved for the benefit of the estate. In *Tri-Sonic,* an Act case, the trustee was not permitted to use an assigned lien to defeat junior lienholders. The court believed that the "safe-

Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate *but only with respect to property of the estate.* (emphasis added).

This section is normally utilized when the trustee avoids a creditor's lien on property that was the debtor's property and which became, upon filing, property of the estate. As this court noted in *In re Appalachian Energy Industries, Inc.,* 25 B.R. 515, 9 BANKR.CT.DEC. (CRR) 1162 (M.D.Tenn. 1982) § 551 is intended to "prevent the windfall to junior lienors that would result when a trustee in bankruptcy successfully avoids a senior lien on property." The trustee under § 551 is entitled to assert the avoided lien rights on behalf of the general creditors to defeat junior lienholders' interests in the property. Unlike practice under the prior Act,[8] § 551 automatically preserves the avoided lien if avoidance falls within the language of the section. In the present case, the trustee seeks to preserve an avoided lien against property which is *not* property of the estate.[9] Can a trustee under the Bankruptcy Code preserve an avoided lien on nonestate property?

No decisions have been found addressing this issue under the Code. On remarkably similar facts, the United States Supreme Court interpreted § 67 of the Bankruptcy Act of 1898 to allow the trustee to preserve a lien for the estate even where the property had been conveyed by the debtor for fair consideration before the lien attached. *First National Bank v. Staake,* 202 U.S. 141, 26 S.Ct. 580, 50 L.Ed. 967 (1906). In *Staake,* the court specifically rejected the argument that the trustee could only preserve liens upon property of the debtor which would pass to the trustee in bankruptcy. Justice Brown stated that § 67f of the Bankruptcy Act of 1898:

Is merely carrying out the general purposes of the Act of securing to the creditors the entire property of the bankrupt, reckoning as part of such property liens obtained by attaching creditors against real estate which had been transferred to another, though no deed had been actually executed and recorded.

202 U.S. at 148, 26 S.Ct. at 583, 50 L.Ed. at 970. Justice Brown held that § 67 of the 1898 Act "contemplates that attaching creditors may acquire liens upon property which would not pass to the bankrupt if the liens were absolutely annulled, and therefore recognizes such liens, but extends their operation to the general creditors." *First National Bank v. Staake,* 202 U.S. at 149, 26 S.Ct. at 584. If *Staake* has continuing vitality, it would appear that the trustee in bankruptcy can preserve an avoided lien on property that is not property of the estate.

guards of (former) Rule 611 could be subverted by permitting assignments in that junior lienholders might be deprived of notice and chance for hearing."

The concept of "preservation" of an avoided lien is nowhere fleshed-out in the Code and cases involving lien preservation do not reach the question of "what" is preserved. We reserve for future consideration whether "preservation" of a lien enhances the enforcement rights of the trustee and whether "preservation" affects the applicable state time limitations on lien enforcement.

8. Under the former Bankruptcy Act, authority to preserve an avoidable lien for the benefit of the estate was scattered throughout various provisions enacted during the long history of the law. *See* §§ 60b, 67a(3), 67c(2), 67d(6), and 70e(2). Former Bankruptcy Rule 611 was enacted to supplement these provisions by providing that "whenever any transfer is voidable by the trustee, the court may determine, in an adversary proceeding in which are joined persons claiming interests or rights in the property subject to the transfer whether the transfer shall be avoided only or shall be preserved for the benefit of the estate." Under these provisions, the trustee had to institute a proceeding seeking an order for the preservation of the invalidated lien. The court then had discretion to grant or refuse preservation according to the equities of the case. *See, e.g., First National Bank v. Live Stock National Bank,* 31 F.2d 416 (8th Cir.1929); *Egyptian Supply Co. v. Boyd,* 117 F.2d 608 (6th Cir.1941); 4 KING, COLLIER ON BANKRUPTCY ¶ 67.16 (14th ed. 1978).

9. We note again that this conveyance was completed as between the debtor and Connell *before* Edgcomb's lien attached, but because of the delay in recording the deed, the lien attached to the property "owned" by Connell.

Changes in the bankruptcy statutes since 1906 contradict the holding of the Supreme Court in *Staake*. Section 67f of the Bankruptcy Act of 1898 provided in pertinent part as follows:

> That all levies, judgments, attachments, or other liens obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, *unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien shall be preserved for the benefit of the estate.* (emphasis in the original).

Bankruptcy Act of 1898, 11 U.S.C.S. § 107(f) (amended by Acts June 7, 1934 and June 22, 1938). As explained above, the Bankruptcy Reform Act of 1978 in § 551 specifically provides for preservation of certain avoided transfers. However, the new language of § 551 preserves the identified liens "only with respect to property of the estate." [10]

The legislative history indicates that the "only with respect to property of the estate" language was appended to the preservation power to prevent the trustee from asserting an avoided tax lien against after acquired property of the debtor. The record is silent as to application of the section with respect to avoided liens of the variety addressed in *Staake*. 126 CONG. REC. H11097 (daily ed. Sept. 28, 1978) (statement of Mr. Edwards). Although the intent may have been to only preclude enforcement of certain liens on after-acquired property, the literal language of the statute precludes preservation of an avoided lien against any property not part of the estate.

A scenario similar to such as has arisen here was anticipated in 1 L. KING, COLLIER ON BANKRUPTCY ¶ 551.01 n. 5 (15th ed. 1982). The authors note that under prior law (i.e. *Staake*) the trustee could preserve and enforce an avoided lien even against *bona fide* purchasers of property who acquired the property after fixing of the lien. Under § 551, the outcome is seen as "less clear" although the authors suggest the trustee should still be able to enforce the lien. They argue that "in order to implement legislative intent, it may be appropriate to expand the scope of section 551 to apply to property that is not property of the debtor rather than to apply only to property that is property of the estate." *Id.*

Section 551 of the Bankruptcy Code presents an example of plain statutory language which is inconsistent with well-developed principles and policies of bankruptcy. The basic logic simply stated is that the debtor's assets on the date of the petition should be equitably collected and distributed to all of the debtors' creditors and those who have received preferences or fraudulent conveyances should be forced to return their gains to the estate. Preservation of avoided liens has always been one element of this policy of equitable collection and distribution which insures that an ill-gotten lien will be maintained for the maximum benefit of the general creditors of the estate. This is the essence of the holding of the United States Supreme Court in *Staake* with respect to preservation of avoidable liens on property which does not otherwise become property of the bankruptcy estate.

There is no specific reference in the legislative history of § 551 to the *Staake* case nor any statement of intent to except to the Supreme Court's analysis in that case. The only specific concern indicated in the legislative history to § 551 is preventing trustees from preserving tax liens on after-acquired property. Unfortunately, the language of the exception to preservation in

---

**10.** There is no similar exception to preservation of avoided transfers in any of the Bankruptcy Acts between 1898 and the 1978 law.

§ 551 is broader than the evil perceived in the legislative history.

Reading the exception to preservation in § 551 on its face leads to the incongruous result that the trustee in bankruptcy can avoid liens against nonestate property, but do nothing of benefit for the estate with the avoided lien. The way § 551 now reads, the avoidance of liens on nonestate property would rarely if ever effect a benefit for the estate and would generally not be undertaken by the trustee. The affect of the exception to preservation in § 551 is inconsistent with the general principles of equity of collection and distribution discussed above. For example, imagine a creditor perfects a lien on the debtor's property within 90 days of bankruptcy which would be an avoidable lien under § 547. Imagine further that prior to bankruptcy the debtor sells the property subject to the lien and because of the lien, the net value received by the debtor is reduced. It is not obvious that the debtor's trustee could recover the property itself—the buyer would argue (successfully) that "fair consideration" for property subject to a lien is the fair market value of the property less the amount of the lien. Based on the current wording of § 551 the debtor's trustee could avoid the lien on the property (much to the benefit of the buyer) but could not preserve it for the estate. Thus, the (pre-) bankruptcy estate would have been reduced by the amount of the preferential lien (and presumably the general creditors would suffer accordingly), but the trustee is powerless to return the lost value of the lien to the estate. Logically the estate, not the new owner of the property, should benefit from the power to avoid the preferential lien. The new buyer has already benefited by a reduction in the cost of purchasing the property from the debtor. The estate has suffered detriment and because avoidance of the lien by the trustee will serve no obvious purpose, insult is added to injury: the lienor may well keep its prefer-

ential lien on the property now in the buyer's hands.

All of these arguments militate against the broad wording of the exception to preservation of liens contained in § 551. This court's belief that the exception to preservation of avoided transfers in § 551 is inappropriately broad, however, does not constitute this court as a legislature. The language of this section could be no clearer. Section 551 overrules the logical outcome set forth by the Supreme Court in *Staake* and precludes the trustee from preserving a lien for the benefit of the estate when that lien is not "with respect to property of the estate." Though this court would gladly accept the invitation of the authors of the *Collier* treatise to "expand the scope" of § 551, such is not possible in the face of unambiguous statutory language.

### C. SECTION 546

■ Finally, 11 U.S.C.A. § 546(a) (West 1979) [11] does not help the trustee in this case. Section 546(a) extends time for the trustee to avoid fraudulent transfers, certain liens, preferences, set-offs, or other transfers which the trustee may avoid. *See McAllester v. Aldridge (In re Anderson)*, 30 B.R. 995, 1013 (M.D.Tenn.1983). Here the trustee is not seeking to *avoid* anything—he is seeking to enforce a lien which he already obtained by settlement of an avoidance action.

In summary, there is no provision in the Bankruptcy Code which extends the state time limitation within which the trustee must enforce the lien he acquired from Edgcomb. The trustee has lost his right to enforce the lien because the land was not executed upon and sold within 12-months of judgment as prescribed by Tennessee law. Section 551 does not operate to preserve this lien on nonestate property for the benefit of the estate.

---

**11.** 11 U.S.C.A. § 546(a) (West 1979) provides that:

(a) An action or proceeding under section 544, 545, 547, 548 or 553 of this title may not be commenced after the earlier of—

(1) two years after the appointment of a trustee under section 702, 1104, 1163, or 1302 of this title; and

(2) the time the case is closed or dismissed.

We must emphasize the narrowness of this holding. Since this is not a case involving enforcement of a lien against property of the estate or against a debtor's property, we need not reach the question whether a lien on such property which is preserved under § 551 is nonetheless burdened with state limitation statutes. Our holding should be confined to those situations where the trustee is attempting to enforce a lien against nonestate property and such lien is not "preserved" for the estate under § 551.

An appropriate order will be entered.